589 So.2d 670 (1991)
KLLM, INC. and the Fidelity & Casualty Company of New York
v.
Charles E. FOWLER.
No. 91-CC-0078.
Supreme Court of Mississippi.
November 6, 1991.
*671 Clifford B. Ammons, Watkins & Eager, Jackson, for appellant.
R. Louis Field, Way Field & Bodron, Vicksburg, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and BANKS, JJ.
BANKS, Justice, for the Court:

I.
Here we are called upon to decide whether the legislature, through its revised definition *672 of injury in our Worker's Compensation Law, has narrowed the scope of coverage of the law. We hold that it has not, that is, that the revised definition does no more than codify existing law, at least insofar as it pertains to today's issues.
This is an appeal and cross-appeal of a Worker's Compensation Commission order dated July 19, 1990, which was affirmed by the Circuit Court by amended order dated January 4, 1991. The Commission determined that Fowler, a cross-country truck driver, sustained a compensable injury to his back. Fowler was awarded the following benefits:
(1) Temporary total disability from November 1, 1988, to January 24, 1989;
(2) Ten percent (10%) permanent partial disability beginning January 25, 1989, and continuing for 450 weeks;
(3) Medical services and supplies; and
(4) Penalties.
The employer (KLLM) and carrier (Fidelity) appeal claiming Fowler is not entitled to any benefits and raise this main issue:
WHETHER FOWLER SUSTAINED AN INJURY IN THE COURSE AND SCOPE OF HIS EMPLOYMENT WITHIN THE MEANING OF THE "NEW DEFINITION OF INJURY." MISS. CODE ANN. § 71-3-3(b) (Rev. 1989)[1]
Fowler cross-appeals, claiming the Mississippi Worker's Compensation Commission erred in reducing his permanent partial disability award to only ten percent (10%).[2] He also argues that the amendment to section 71-3-3(b) did nothing more than codify existing law.

II.
Fowler is a cross-country truck driver, and had been so employed for over 16 years. He had been employed with KLLM for a year and a half prior to suffering the injury in question. On or about October 10th or 11th of 1988, while employed by KLLM, Fowler was driving a truck dispatched out of Jackson, Mississippi, picking up and delivering freight in the Northeast and Midwest of the United States. He slept in the truck and received directions on where to pick up and deliver the freight from the company dispatcher in Jackson, Mississippi. This freight hauling trip was to last until Christmas, or approximately two and one-half months. While en route, however, he began to experience pain in his back and leg. The pain worsened and he was routed home by a KLLM dispatcher. His last day to drive a truck was October 28, 1988.
In addition to driving the truck for ten hours each day, Fowler was required to do a lot of lifting of items between 80 and 90 pounds, and a lot of bending. His duties as driver also included coupling and uncoupling of trailers. This task entailed substantial stress and strain on his back, shoulders and arms. Finally, according to Fowler, getting in and out of the truck was like climbing a ladder.
Fowler experienced his first pain following unloading cargo at South Portland, Maine, and following the uncoupling of a trailer at Rocky Mountain, North Carolina, while en route to Wisconsin. He testified that this pain began either on Monday or Tuesday, October 10th or 11th. Fowler reported the injury to Charlie Tyner, the dispatcher. The dispatcher then routed him home by changing freight pick up and deliveries.
Fowler arrived in Jackson on October 28, 1988. He went to the emergency room at Mercy Hospital in Vicksburg. He was referred by the emergency room doctor to Dr. Daniel P. Dare, an orthopedic surgeon of the Street Clinic in Vicksburg, who performed surgery on November 9, 1988. Physical findings revealed a large extruded fragment of disc up under his left S-1 root. The surgery, labeled a laminotomy or a hemilaminectomy, resulted in the removal of the fragment and the entire disc.
*673 He was discharged from the hospital two days following surgery and continued as an out-patient of Dr. Dare. Dr. Dare released him on January 24, 1989, as having reached maximum medical recovery with a ten percent (10%) permanent partial disability. Dr. Dare testified that Fowler, because of the injury, would not be able to resume his duties as a cross-country freight truck driver.
Fowler testified that he continued to have pain when walking, sitting, bending and lifting, and was unable to fully perform all of the functions required of him as a truck driver. He related his efforts thereafter to get a job: "[I] filled out applications at the ... Mississippi State Employment Office, Petro Resources, Ergon, Middle Transport ... trucking firms ... at Corn Dog 7 in Pemberton Square Mall," where he was told "if you can't bend you can't work." He contacted two out-of-state trucking firms, but Fowler's efforts went unrewarded.
Cynthia Tucker testified that Fowler was a part-time worker at River City Antiques, a furniture auction where she worked, and was able, prior to his injury, to do everything necessary to move and refinish furniture. She testified that following his injury, he could not perform any of these functions. He could not lift furniture, could not bend over to pick up anything, or stoop, and he was slow in all of his movements, including walking. She further testified that Fowler could not get in and out of a truck. She testified to noticing what she described as severe pain when he returned on October 28, 1988, which was apparently located in the small of his back, left hip and left leg.
KLLM and Fidelity called Jeffrey Schmitz, a worker's compensation supervisor, with ten years experience in the claims business. He testified that the freightliner truck being driven by Fowler at the time of the injury was state of the art and was equipped with an air suspended seat, also state of the art. The seat adjusted automatically to the driver's weight and was a "no jolt seat."
The employer and carrier also called Dr. Randall Thomas, a psychologist and rehabilitation counselor from Jackson, Mississippi. Thomas never spoke to Fowler. His testimony was based upon a review of Fowler's medical records and a test drive that he took in the truck described to him as the one Fowler drove. He described the ride as smooth.[3]
The Administrative Judge entered an order dated October 27, 1989 wherein he made the following findings of fact and conclusions of law:
Having considered the evidence and testimony presented in this cause, I find that the preponderance of evidence supports the following findings of fact:
1. Claimant sustained an occupational injury on October 11, 1988, while driving a truck for employer and as a result of this injury he sustained a herniated disc;
2. Because of his industrial injury, claimant was temporarily totally industrially disabled from November 1, 1988, to January 24, 1989;
3. Following his injury of October 11, 1988, claimant reached maximum medical recovery on January 24, 1989;
4. Claimant has been thirty percent (30%) permanently industrially disabled since November 1, 1988;
5. Claimant's average weekly wage at the time of his injury was $377.00;
6. Since reaching his maximum level of medical recovery, claimant has made reasonable efforts to earn his pre-injury wages but has been unable to do so because of his injury;

*674 7. Statutory penalties under Mississippi Code Annotated, Section 71-3-37(5) (Supp. 1989) are applicable.
He ordered the employer and carrier to pay Fowler as follows:
1. Temporary total disability benefits at the rate of $198.00 per week for the period November 1, 1988, to January 24, 1989.
2. Permanent partial disability benefits at the rate of $75.40 for the period beginning January 25, 1989, and continuing for a period not to exceed the statutory maximum of 450 weeks.
3. All medical bills and expenses claimant incurred as a result of his injury of October 11, 1988.
4. The statutory penalties under the provisions of Mississippi Code Annotated, Section 71-3-37(5) (Supp. 1989).
KLLM and Fidelity appealed to the full Commission, and Fowler cross-appealed. By order dated July 19, 1990, the Full Commission affirmed in all other respects, but reduced to ten percent (10%) the permanent partial disability award because "the Commission is of the opinion that Fowler can find gainful employment if he makes reasonable efforts to do so."

III.
Miss. Code Ann. § 71-3-3(b) (Rev. 1989) provides:
"Injury" means accidental injury or accidental death arising out of and in the course of employment without regard to fault which results from an untoward event or events, if contributed to or aggravated or accelerated by the employment in a significant manner. Untoward event includes events causing unexpected results. An untoward event or events shall not be presumed to have arisen out of and in the course of employment, except in the case of an employee found dead in the course of employment. (Emphasis added to show amended portion)
KLLM and Fidelity argue that Fowler is foreclosed from recovery even under the old definition of injury, and certainly is not entitled to recovery under the amended version. In essence, they suggest that this case involves only the mere fact that an injury manifested itself while Fowler was on the job, and that there is no showing of anything other than the "ordinary wear and tear of life" which caused or substantially contributed to this injury. They contend there was no "exertion, strain or other problem on the job" which might have contributed to the injury.
As for the amended definition, KLLM and Fidelity contend that "untoward event" means an occurrence which is out of the ordinary, and "must have had an impact upon the worker which is extraordinary or beyond the wear and tear of every day living." They draw support from cases of mental injury unaccompanied by physical trauma which require the claimant to prove something more than ordinary incidents of employment as a cause of injury. See e.g., Fought v. Stuart C. Irby Co., 523 So.2d 314 (Miss. 1988). The focus, they argue, should be upon the "cause" of the injury, i.e. was the injury "caused" by an untoward event, and not upon whether the "result" was untoward or unexpected.
More important, KLLM and Fidelity contend, is the addition to section 71-3-3(b) of the requirement that the employment contribute to the injury "in a significant manner." They suggest that this imposes a higher burden on claimants seeking to recover for purely physical injuries, again drawing support from mental and psychological injury cases where "the burden has always been greater." They stop short of suggesting proof by clear and convincing evidence, but they do believe Fowler's "burden is to prove more than a `substantial contributing cause;' the burden now is to show a causal connection `in a significant' manner." The employer and carrier argue that Fowler's injuries cannot be presumed, and that the record is void of substantial evidence to show that the work being performed by Fowler contributed to his problem "in a significant manner."
Fowler argues that his burden is simply to prove a causal relationship between the injury and employment by a preponderance of the evidence, and that the test of whether *675 his injury is "work connected" is a test unrelated to the proximate cause concept of tort law and requires only that the employment rationally contribute to the injury. He suggests that mental and psychological injuries are unique unto themselves and necessarily require stricter proof because of the absence of objectively discernible physical injury or disability.
Fowler also disputes the significance of the inclusion of the strictures the legislature intended, if any, were undone by their defining an "untoward event" as "events causing unexpected results."

IV.
As all should know, our scope of review is quite limited. We will not reverse the Commission if its decision is supported by substantial evidence. Quitman Knitting Mill v. Smith, 540 So.2d 623, 626-27 (Miss. 1989). As to matters of law, our review is de novo, but the interpretation of the Commission of the Workers' Compensation Law is to be accorded great weight and deference. See Petition of 2,952 Registered Voters, 574 So.2d 619, (Miss. 1990).
The question whether the injury here involved is the result of an "untoward event" within the meaning of our law is answered quite readily. We accept the well reasoned and supported analysis offered by Professor John R. Bradley, Jr. which is stated in relevant part as follows:
In its first sentence the restated definition adds a requirement that the injury result from "an untoward event or events." But the second sentence says the requirement of "untoward" is met if the injury is an unexpected result. Thus, the restated definition codifies (though awkwardly) existing law in these ways.
1. An unexpected event is by external definition an untoward event. Harm resulting from it is covered as an injury.
2. An unexpected result (harm to a worker) of usual work activity is by this internal definition (and probably by external definition) an untoward event. The resulting harm is covered as an injury.
* * * * * *
If the harm to the worker includes physical results, there is an "accidental injury" if either the event resulting in harm or the harm itself is unexpected. This is the rule of the current Mississippi case law and is carried forward by the restated definition.
* * * * * *
When an injury with physical results develops gradually from the work and cannot be traced to a single event or to a precise time, the injury meets the requirement of accidental injury if it is causally connected to the work activities or environment and the events are "within a reasonably definite and not too remote period of time."
* * * * * *
This requirement was satisfied ... when friction from the truck seat over a period of three years aggravated a truck driver's tailbone to produce an ailment known as "jeep disease." Tate v. Dr. Pepper Bottling Co., 70 So.2d 602 (Miss. 1954).
* * * * * *
The restated definition, by referring to "event or events," retains the rule that a gradually developing injury is an accidental injury.
J. Bradley, Two Workers' Compensation Law Amendments: Definition of "Injury" and Method of Stating Maximum Benefits 14 (May 13, 1988) (Paper published by Third Annual Mississippi Workers' Compensation Educational Conference, Miss. Workers' Compensation Commission).
More troubling is the addition to section 71-3-3(b) of the phrase "in a significant manner" which bears on the requisite causal connection between the injury and work. KLLM and Fidelity devote most of their attention and effort to this phrase, and unfortunately, the Commission, the circuit court and Fowler all but ignore this phrase. The question simply put is whether this phrase increases the claimant's burden of proof of causal connection. KLLM and *676 Fidelity suggest that it does. As authority they suggest that the phrase was borrowed from a Michigan statute prescribing the prerequisites for recovery for mental disability and cite a dissenting opinion which contains a cryptic reference to the language "in a significant manner" as an effort to "tighten" the definition of injury. Gacioch v. Stroh Brewery Co., 426 Mich. 612, 396 N.W.2d 1 (1986).[4] Nowhere is there an indication that the term "significant" means something greater than "substantial".
Prior to this amendment, proof of the requisite causal connection was met by substantial evidence showing the injury to have arisen "out of and in the course of employment." The phrase "arising out of" does not require that employment be the sole cause of the injury. "Reasonable relation of employment and injury may involve minimal causation, less than needed for liability in the field of Torts." See Big "2" Engine Rebuilders v. Freeman, 379 So.2d 888, 890 (Miss. 1980). To be even minimally causative, Professor Bradley points out that conditions of employment must be some substantial or significant factor in bringing about the injury. Bradley, supra, at 31 citing Sonford Products Corp. v. Freels, 495 So.2d 468 (Miss. 1986); Dependents of Barrett v. Leake County Coop (A.A.L.), 249 So.2d 387, 388 (Miss. 1971).
We hold that the addition of the phrase "in a significant manner" to section 71-3-3(b) states what was already implicit in the workers' compensation law as interpreted by this court. Requiring the work and injury to be causally connected in a significant manner is nothing more than a requirement that the work connection be supported by substantial evidence as minimally causative of the injury.

V.
The language was added to section 71-3-3(b) by amendment in 1988, to be a mere codification of existing law. Thus, the Administrative Judge and the Commission did not err in finding under the amended version of section 71-3-3(b) that Fowler suffered a compensable injury. There is substantial evidence to support a finding that the work activities of Fowler, over a reasonable period of time, contributed to his back injury in a significant manner.
However, upon review, we find the award by the Commission of only ten percent (10%) permanent partial disability to be against the overwhelming weight of the evidence. There is little basis in the record for the conclusion that Fowler has work available to him. The employer made no effort to rebut the prima facie case of disability made by Fowler through his testimony establishing that he had unsuccessfully sought other employment. The facts upon which the Commission rests its conclusion are not stated. "Everything considered we believe that justice requires that this matter be reconsidered." Karr v. Armstrong Tire & R. Co. et al., 216 Miss. 132, 139, 61 So.2d 789, 793 (1953). Accordingly, that portion of the Commission's order, which was affirmed by the circuit court, is reversed and the issue of the level of partial disability is remanded to the Commission for further consideration.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS, DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and McRAE, JJ., concur.
NOTES
[1] Miss. Code Ann. § 71-3-3 (Supp. 1990) was amended in 1988, and the amended version is set forth later in this opinion.
[2] The Administrative Judge awarded Fowler thirty percent (30%) permanent partial disability.
[3] KLLM and Fidelity carrier sought to elicit opinions from Thomas as to the cause of the injury, or more accurately, the absence of a discernible causative factor in truck driving activities. It was also disclosed that Thomas was a member of the Worker's Compensation Advisory Committee and the carrier sought to elicit opinions from him as to the meaning of the Worker's Compensation Law. The administrative law judge correctly sustained objections to this testimony finding that the opinions proffered as to the cause of the injury were beyond Thomas' field of expertise and that questions regarding the interpretation of the law were for the Commission and the court.
[4] In making this suggestion KLLM and Fidelity draw support from Professor Bradley, a participant with the Advisory Board to the Mississippi Workers Compensation Commission. J. Bradley, supra, at p. 28. The deliberations of the advisory board, while interesting reading, form no part of a "legislative history" in aid of this court's interpretation of the statute. We must determine what the law means from language used by the legislature. Moreover, despite his participation with the Advisory Board in developing this legislation, Professor Bradley expresses no definitive view of the effect of this language. Surely the legislature cannot be presumed to have adopted the view of the Michigan dissenter.