973 So.2d 298 (2008)
BOYD MISSISSIPPI, INC. and Continental Casualty Company, Appellants
v.
Iris MOORE, Appellee.
No. 2007-WC-00422-COA.
Court of Appeals of Mississippi.
January 22, 2008.
*299 Amy K. Taylor, attorney for appellants.
Jim Davis Hull, attorney for appellee.
Before LEE, P.J., IRVING and ROBERTS, JJ.
LEE, P.J., for the Court.

FACTS AND PROCEDURAL HISTORY
¶ 1. During her employment at the Silver Star Resort and Casino in Philadelphia, Mississippi, Iris Moore was injured when a large glass door at one of the casino exits opened and struck her on the left side of her face and head. According to Moore, she was cleaning the door when a patron opened the door hitting her. The accident occurred on September 28, 1996. Moore suffered a cut, a knot above her eye, and a bruise. Moore did not miss any work because of the accident and did not experience any problems with her eye for the next six years.
¶ 2. In September 2002, Moore's one-year-old child bumped her left eye causing it to tear up. Four to six weeks later Moore went to an optometrist who diagnosed her with a detached retina and referred her to a specialist. She was also found to be legally blind in her left eye.
¶ 3. Moore's employment with the Silver Star Casino ended in 1999. Since then she had been employed with another company and insured through her employer by Blue Cross Blue Shield. Blue Cross paid for all of her medical treatment concerning her left eye including her multiple surgeries. She did not present any of the medical bills to the Silver Star.
¶ 4. Moore filed a petition to controvert in August 2004, claiming that the accident on September 28, 1996, caused the detached retina. Boyd Mississippi, Inc. and Continental Casualty Co., her employer and workers' compensation carrier while employed at the Silver Star, denied that she was entitled to benefits. A hearing was held before an administrative law judge (ALJ) who agreed with the employer/carrier that Moore's injury, was not compensable. The ALJ determined that Moore "failed to prove by a preponderance of the evidence that the alleged, incident of September 28, 1996, and the retinal detachment and scarring were causally related to her employment." Further, the ALJ stated that she "simply did not find the claimant's testimony to be believable." The Mississippi Workers' Compensation Commission affirmed the findings of the ALJ.
¶ 5. Moore appealed the Commission's decision to the Circuit Court of Neshoba County. The circuit court reversed the decision of the Commission finding it not to be supported by substantial evidence. The circuit court was convinced by Dr. Joel Herring's testimony that it was a "conceivable possibility" that Moore's eye injury was related to the accident at issue. In its ruling, the circuit court stated that since doubtful cases should be resolved in favor of compensation, this case should be resolved in favor of Moore.
¶ 6. Boyd Mississippi and Continental Casualty now appeal asserting that substantial evidence existed to support the findings of the Commission.
*300 ¶ 7. Finding that the Commission's decision was based on substantial evidence, we reverse the judgment of the circuit court and reinstate the decision of the Commission.

STANDARD OF REVIEW
¶ 8. The standard for appellate review of workers' compensation claims is limited. It is well settled that "the Commission is the ultimate fact-finder." Hardin's Bakeries v. Harrell, 566 So.2d. 1261, 1264 (Miss.1990). Our review is limited to a "determination of whether or not the decision of the commission is supported by the substantial evidence." McCarty Farms, Inc. v. Banks, 773 So.2d 380, 386-87(¶ 23) (Miss.Ct.App.2000) (quoting Delta CMI v. Speck, 586 So.2d 768, 772-73 (Miss. 1991)). "This Court will overturn a Commission decision only for an error of law or an unsupportable finding of fact." Cook v. President Casino, 740 So.2d 963, 966(¶ 16) (Miss.Ct.App.1999) (citation omitted). Matters of law are reviewed de novo. KLLM, Inc. v. Fowler, 589 So.2d 670, 675 (Miss.1991).

DISCUSSION
¶ 9. Boyd Mississippi and Continental Casualty argue that the Commission's decision to deny benefits was based on substantial evidence; thus, the circuit court erred in overruling the Commission.
¶ 10. Moore went to an optometrist for routine annual examinations starting in 1998. Her first visit with Dr. Lee Johnson was in 2000. At her annual visit in 2001, she mentioned having some decrease in vision in both eyes, and she wanted to change her glasses. No mention was made at any of these visits of an accident at the casino, and no accident history was provided. Moore returned for her annual exam in 2002. In September 2002, four months after her annual visit, Moore returned to Dr. Johnson complaining of a decrease in vision since August 2002. Dr. Johnson discovered she had a retinal detachment in her left eye. Dr. Johnson referred Moore to Dr. Herring, a specialist in ophthalmology and retinal surgery. During her initial visit with Dr. Herring in September 2002, Moore stated that her child had elbowed her in the eye, but that she was otherwise healthy and had no previous eye problems. She did not mention the casino accident or any prior eye problems to Dr. Herring. Dr. Herring found a detached retina in the left eye with evidence of scarring. According to Dr. Herring, the area of detachment was sequential and had begun at the edge of the eye and progressed over time. Dr. Herring performed a series of seven surgeries to repair the detached retina and to remove the scar tissue that had developed thereafter.
¶ 11. Both Dr. Herring and Dr. Johnson testified through depositions. Dr. Johnson testified at his deposition in July 2005, that based on a reasonable optometric probability, the accident at the casino was related to or caused the retinal detachment. In a letter written in April 2005, Dr. Johnson stated that since he was not a specialist he would defer to Dr. Herring's opinion as to whether a retinal detachment could lie dormant for an extended period of time. In May 2005, Dr. Johnson wrote another letter stating that retinal detachments can occur from trauma months and even years after an accident; therefore, a correlation could be ,drawn between the accident at the casino and the retinal detachment. When questioned in his deposition about why he changed his opinion, Dr. Johnson testified that after he wrote the first letter he read a journal article while doing research that said retinal detachment may occur weeks, months, or even years after an accident. *301 He stated that he felt comfortable giving that opinion based on his research. Dr. Johnson also stated that he could not say that the detachment was not caused by some other factor.
¶ 12. Dr. Herring testified through his deposition that he could not state to a reasonable degree of medical probability that being hit in the eye with a door would be the proximate cause of retinal detachment and scarring. From the characteristics of the scarring, he found that the detachment had progressed in part over a period of time and was partially acute. He testified that it was conceivable that a detachment could have existed for four years before becoming large enough to be noticeable. Dr. Herring also testified that it was conceivable that the scarring could have occurred over a period of a month to six weeksthe period of time that had passed since her child elbowed her eye. He stated that the detachment would not have been noticed at a routine visit unless the eye was dilated.
¶ 13. After reviewing the testimony of Dr. Herring and Dr. Johnson, the Commission found Dr. Herring's testimony to be more persuasive since he was a specialist in the field of retinal surgery. Neither doctor could state with any certainty that the accident at the casino was the underlying cause of the retinal detachment. The findings of the ALJ, adopted by the Commission, state that "[t]he medical proof is simply not there to establish a causal relationship between the alleged accident and Ms. Moore's left eye condition." We agree with the Commission that no testimony was presented to show within a reasonable degree of medical probability that the retinal detachment was in any way related to the injury at the casino. We reverse the judgment of the circuit court and render judgment reinstating the decision of the Commission in favor of Boyd Mississippi, Inc. and Continental Casualty Co.
¶ 14. THE JUDGMENT OF THE NESHOBA COUNTY CIRCUIT COURT IS REVERSED AND RENDERED AND THE DECISION OF THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION IS REINSTATED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.