LEE, P.J., for the Court.
 

 PROCEDURAL HISTORY
 

 ¶ 1. On February 21, 2004, Armenia Fair (Fair) was working at the Beau Rivage Resort, Inc., (the Employer) in Biloxi, Mississippi, when she suffered an injury to her right shoulder. Fair had a history of problems with her right shoulder. Fair filed a claim for workers’ compensation. After a hearing, the administrative law judge (ALJ) ordered the Employer to pay temporary disability benefits from the date of the injury until the date of maximum medical improvement. The Employer filed an appeal to the Mississippi Workers’ Compensation Commission. Upon review, the Commission reversed the ALJ in part, finding that Fair’s accident was a temporary aggravation of her pre-existing condition, and that, by September 1, 2004, the injury had ceased to be disabling. The Commission ordered the Employer to pay Fair’s temporary disability benefits from February 21, 2004, the date of the injury, to September 1, 2004, the date Fair returned to her pre-injury condition.
 

 ¶ 2. Fair appealed the Commission’s decision to the Harrison County Circuit Court, alleging that the Commission’s deci
 
 *612
 
 sion was not based upon substantial evidence. The trial court affirmed the decision of the Commission, finding that it was supported by substantial evidence. Fair now appeals, asserting two issues that we combine as follows: the trial court erred in affirming the Commission’s decision as it was not supported by substantial evidence.
 

 FACTS
 

 ¶3. At the time of her accident, Fair was employed as a gift shop cashier at the Beau Rivage Casino. Fair assisted customers and operated the cash register, but she was not required to lift heavy objects. On the day of the accident, Fair testified that while she was walking down a hallway, carrying two bags of money which weighed approximately seven pounds each, she stumbled on the carpet and the right side of her body fell against the wall. Fan-notified her supervisor of her accident, and a security guard escorted her to the hospital.
 

 ¶ 4. Prior to her accident, Fair was being treated by two physicians for her right-shoulder problems. Dr. Reza Mo-takhaveri had been Fair’s primary physician since 2000. Dr. Motakhaveri had diagnosed Fair with a rotator-cuff injury to her right shoulder as early as October 24, 2001. In the years prior to her accident, Fair had been treated several times with medication and injections to treat her shoulder injury. On October 27, 2003, Dr. Motakhaveri examined Fair and noted that her right-shoulder pain returned a few months after each injection. Dr. Motak-haveri then referred Fair to Dr. George Salloum, an orthopaedic surgeon.
 

 ¶ 5. Dr. Salloum examined Fair on December 17, 2003. Dr. Salloum’s notes indicate that Fair told him that she had injured her rotator cuff in a fall approximately seven years ago. Fair indicated to Dr. Salloum that her right-shoulder pain was constant and registered eight out of ten in severity. Dr. Salloum believed Fair had a right-shoulder rotator-cuff tear with severe impingement; he ordered an MRI and scheduled Fair for a “shoulder decompression.” That same day, Dr. Salloum sent a letter to Dr. Motakhaveri, in which he reported the results of his examination of Fair. Dr. Salloum stated that he “had discussed surgical intervention with [Fair] to include a decompression, a distal clavicle resection, and rotator[-]cuff repair if necessary. [Fair] is willing to proceed with this.” However, Fair testified that she only remembered Dr. Salloum telling her that she had arthritis in her shoulder. The MRI results indicated a rotator-cuff tear and severe degenerative joint disease.
 

 f 6. During this time, Fair was diagnosed with breast cancer. Fair had surgery on March 11, 2004, and she then underwent chemotherapy for several months. Fair did not return to work at the Beau Rivage Casino.
 

 ¶ 7. After her work injury, Fair saw Dr. Motakhaveri again on March 3, 2004, for treatment of her right shoulder, and Dr. Motakhaveri ordered another MRI and referred her back to Dr. Salloum. Dr. Sall-oum examined Fair and reviewed her MRI, finding that she had a “massive rota-tor[-]cuff tear with retraction.” Dr. Sall-oum reported that he had reviewed both of Fair’s MRIs and found them “very similar in nature with similar findings.” Dr. Sall-oum noted that Fair was “still a candidate for surgery.” In his notes after a followup visit, Dr. Salloum stated that Fair was concerned because he had “made a statement to workers’ compensation about her having a prior rotator[-]cuff tear.” Dr. Salloum again stated that the March 2004 MRI revealed the same findings as the December 2003 MRI. Dr. Salloum noted
 
 *613
 
 that Fair had a chronic rotator-cuff tear as of December 2003, but “most likely,” her shoulder had “calmed down and [she] had an exacerbation of a pre-existing condition.”
 

 ¶ 8. After being released by her oncologist, Fair began working in February 2005 as a greeter at Walmart. Shortly after Hurricane Katrina, Fair was transferred to another Walmart where she worked in the ladies department for forty hours per week.
 

 STANDARD OF REVIEW
 

 ¶ 9. The standard of review in workers’ compensation cases is well established. The decision of the Commission will be reversed only if it is not supported by substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law.
 
 Weatherspoon v. Croft Metals, Inc.,
 
 853 So.2d 776, 778(¶ 6) (Miss.2003) (citing
 
 Smith v. Jackson Constr. Co.,
 
 607 So.2d 1119, 1124 (Miss.1992)). If the Commission’s decision and findings of fact are supported by substantial evidence, then we are bound by them even if we would have been convinced otherwise.
 
 Spann v. Wal-Mart Stores,
 
 700 So.2d 308, 311(¶ 12) (Miss.1997) (citing
 
 Fought v. Stuart C. Irby Co.,
 
 523 So.2d 314, 317 (Miss.1988)). We will exercise de novo review on matters of law.
 
 KLLM, Inc. v. Fowler,
 
 589 So.2d 670, 675 (Miss.1991).
 

 DISCUSSION
 

 ¶ 10. Fair’s chief contention on appeal is that the Commission’s decision was not supported by substantial evidence. Fair claims that she proved that she suffered more than a temporary aggravation of her pre-existing condition. In
 
 Rathborne, Hair & Ridgeway Box Co. v. Green,
 
 237 Miss. 588, 594, 115 So.2d 674, 676 (1959), the supreme court held the following:
 

 The rule in this State is that when a preexisting disease or infirmity of an employee is aggravated, lighted up, or accelerated by a work-connected injury, or if the injury combines with the disease or infirmity to produce disability, the resulting disability is compensable. A corollary to the rule just stated is that when the effects of the injury have subsided, and the injury no longer combines with the disease or infirmity to produce disability, any subsequent disability attributable solely to the disease or infirmity is not compensable.
 

 ¶ 11. The evidence clearly established that Fair had a pre-existing right-shoulder injury and that it was aggravated by the accident on February 21, 2004. According to Dr. Motakhaveri, he began treatment on Fair’s right shoulder in October 2001, and he continued treating Fair for “rota-tor[-]cuff symptoms/tendonitis” for the next two years. As of October 2003, the injections Fair had been receiving to treat her right shoulder were no longer effective. Dr. Salloum noted that the December 2003 MRI showed a rotator-cuff tear and severe degenerative disease. Dr. Sall-oum’s notes from the December 17, 2003, examination state that Fair complained of the following:
 

 She complains of difficulty lifting the shoulder. She complains of pain when driving and pain when holding her arms out in front of her, pain with lifting objects and pain at night. She has difficulty sleeping. She states it is a constant aching pain, worse with any lifting. It is 8 out of 10 in severity.
 

 Dr. Salloum also noted that Fair told him that she had injured her right shoulder approximately seven years ago. Dr. Sall-oum’s notes indicate that the two MRIs, one pre-injury and one post-injury, were “very similar in nature with similar findings.” Although Fair testified that the pain in her right shoulder felt different after the injury, she told Dr. Salloum that
 
 *614
 
 the pain level was eight out of ten in severity, the same level as told to Dr. Salloum in December 2003.
 

 ¶ 12. Fair emphasizes that, in a letter dated December 2, 2004, Dr. Salloum noted that her pain had been “unrelenting.” Fair concludes that Dr. Salloum changed his opinion on her injury. However, we reiterate that Dr. Salloum noted that her pain prior to the injury was described as “a constant aching pain.” In a response, dated September 1, 2004, to a questionnaire sent by the Employer’s attorneys, Dr. Salloum answered that it was his opinion that Fair could have returned to work by then with no lifting or use of her right-upper extremity. Fair could not return to work at the time because she was undergoing chemotherapy treatments for her breast cancer. At the time of the hearing before the ALJ, Fair testified that she was not currently receiving any treatment for her right shoulder.
 

 ¶ 13. The Commission found substantial evidence that Fair’s need for right-shoulder surgery was not related to her accident on February 21, 2004, but it was attributable to pre-existing right-shoulder problems dating back more than seven years prior. We agree and find that the Commission’s decision is supported by substantial evidence. This issue is without merit.
 

 ¶ 14. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.