28 So.3d 619 (2009)
Judy WHITE, Appellant,
v.
MISSISSIPPI DEPARTMENT OF CORRECTIONS, Appellee.
No. 2008-WC-01309-COA.
Court of Appeals of Mississippi.
July 21, 2009.
Rehearing Denied November 24, 2009.
Certiorari Denied February 25, 2010.
*620 Gilson Davis Peterson, attorney for appellant.
Cassandra B. Walter, Ridgeland, attorney for appellee.
EN BANC.
LEE, P.J., for the Court.

PROCEDURAL HISTORY
¶ 1. On November 21, 2005, Judy White filed a petition to controvert with the Mississippi Workers' Compensation Commission (Commission) alleging that she suffered a work-related injury to her lower back, specifically a herniated disc, on March 22, 2005. White stated that when she sat down on the toilet, she slipped and fell against the back of the toilet, resulting in the claimed injury. At the time of her injury, White was working as a correctional officer with the Mississippi Department of Corrections (MDOC) at its facility in Parchman, Mississippi.
¶ 2. After a hearing on the matter, the administrative law judge (ALJ) determined that White's injury arose out of her employment with the MDOC. The ALJ awarded White permanent total disability benefits of $349.18 per week for 450 weeks, penalties and interest at the legal rate, and any medical services needed for her recovery. The MDOC appealed to the Commission. The Commission reversed the ALJ's decision, finding that although White's injury may have occurred during the course of her employment, it did not arise out of her employment. White appealed to the Sunflower County Circuit Court, and the trial court affirmed the Commission's decision to deny benefits. White now appeals, asserting that the trial court erred in affirming the decision of the Commission to deny benefits.

FACTS
¶ 3. On March 22, 2005, White arrived at work, signed in, and spoke with some co-workers. White then went to the bathroom in the security office. The bathroom was used by both men and women, and it contained a single toilet. White testified that when she sat down on the toilet, her right foot slipped; she hit the back of the toilet; and she sat down hard on the seat. White immediately felt pain and when she stood up, pain "ripped" down her right leg. According to White, the toilet in that particular bathroom often leaked water on the floor.
¶ 4. Hattie Berry, a corrections officer, was on duty that morning. Officer Berry testified that she spoke with White prior to her injury, and White seemed fine. Officer Berry later saw White limping from the bathroom. Officer Berry testified that White "could barely, barely make it. By the time she got to me she couldn't even stand up on her own. I had to literally hold her to support her and she was just crying hysterically." Officer Berry stated that White said she had hit her back on the toilet. After observing White, Officer Berry called her supervisor, Lieutenant Rebecca Blount, and asked for assistance. Lt. Blount arrived at the scene approximately five to ten minutes after the call from Officer Berry.
¶ 5. Lt. Blount testified that when she arrived, White was leaning against a wall, crying, and repeating, "My leg is killing me." Officer Berry was rubbing White's leg. Lt. Blount offered to transport White to the hospital, but White wanted to see her own doctor. Lt. Blount notified her supervisor that White was sick, and she was taking White to seek medical help. At that moment White's daughter arrived and decided to take White for medical treatment. Lt. Blount testified that she practically had to carry White to her daughter's *621 car. At the time Lt. Blount filled out a supervisor's accident report, she was unaware White had slipped and fallen in the bathroom.
¶ 6. White's daughter took White to her chiropractor's office in Batesville. Dr. Don Barnett, White's chiropractor, examined White and suspected she had a ruptured disc. Dr. Barnett's note describing White's visit stated that White told him she "tryed [sic] to get off of comode [sic] and pain sta[r]ted." Dr. Barnett noted that White "was in severe pain[;] she could hardly walk." Later that day White went to the emergency room at Baptist Memorial Hospital in Oxford. White filled out an admissions form and marked "No" to the question asking whether the injury was work related. White testified that she was in so much pain that she could not remember what she told the nurses.
¶ 7. The emergency room physician referred White to a neurosurgeon, Dr. Thomas Windham. Dr. Windham testified that White reported, "getting up in the bathroom at work and [having] right hip and leg pain with numbness." Dr. Windham indicated that White suffered an "acute lumbar disc rupture." Dr. Windham also stated that White's prior back problems, namely degenerative disc disease and osteoarthritis, did not cause the disc rupture. At Dr. Windham's office, White filled out a patient-intake form, and she marked "no" to the question about whether her injury was a workers' compensation case. White testified that she did not know her injury was considered a workers' compensation case. White had filed two prior workers' compensation claims, one in 1996 and the other in 2000. Both injuries resulted in back pain, but White was able to return to full-duty work.
¶ 8. White had surgery to repair a herniated disc in April 2005. After her surgery, Dr. Windham advised her to apply for disability benefits. During the first week of June 2005, White went to Parchman to apply for disability. White discussed her case with Karen Ware, who was responsible for assisting employees when applying for retirement. White informed Ware of her circumstances, including the injury she received on March 22, 2005. Ware informed White that her injury might be compensable, and she advised White to see Jay Philley, who administered work-related claims for Parchman employees.
¶ 9. While meeting with Philley, White was shown Lt. Blount's incident report prepared in March 2005. White informed Philley that the report was not accurate, and she was advised to prepare a report of the incident. On June 13, 2005, White completed an incident report that stated her foot slipped; her back hit the toilet tank; she fell hard on the seat; and she experienced a "ripping" pain when she got up from the toilet. At some time in early to mid June 2005, Officer Berry visited White to pay her respects following the death of White's mother. Officer Berry stated that White told her she was instructed to fill out a report because her back injury might have been work related. Officer Berry, not at the request of White, then decided to fill out her own report stating that after the accident, White informed her that she had slipped and fallen on the toilet and hit her back. Officer Berry stated that she was so upset about White's injury that she inadvertently forgot to tell Lt. Blount how White's injury occurred. Officer Berry said that "[m]y ultimate concern, at the time, was to try and get [O]fficer White some type of assistance because it was apparent she was in a lot of pain." Officer Berry testified that immediately after White left with her daughter, she had to run to her post to perform part of her job duties and did not *622 have the opportunity to discuss the accident with Lt. Blount.
¶ 10. Lt. Blount testified that she was informed in June 2005 that White's injury was the result of a slip and fall. Lt. Blount stated that her supervisor ordered her to do a follow-up incident report containing the new information from White.

STANDARD OF REVIEW
¶ 11. The standard of review in workers' compensation cases is well established. The decision of the Commission will be reversed only if it is not supported by substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law. Weatherspoon v. Croft Metals, Inc., 853 So.2d 776, 778(¶ 6) (Miss.2003) (citing Smith v. Jackson Constr. Co., 607 So.2d 1119, 1124 (Miss. 1992)). If the Commission's decision and findings of fact are "supported by substantial evidence, then we are bound by them" even if we would have been convinced otherwise. Spann v. Wal-Mart Stores, Inc., 700 So.2d 308, 311 (¶ 12) (Miss.1997) (citing Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988)). We will exercise de novo review on matters of law. KLLM, Inc. v. Fowler, 589 So.2d 670, 675 (Miss. 1991).

DISCUSSION
¶ 12. White's sole issue on appeal is whether the Commission erred in finding that her injury did not arise out of her employment. Mississippi's workers' compensation statutes compensate injuries "arising out of and in the course of employment without regard to fault which results from an untoward event or events, if contributed to or aggravated or accelerated by the employment in a significant manner." Miss.Code Ann. § 71-3-3(b) (Rev.2000). The term "arising out of employment" simply means there is a causal connection between the employment and the injury. Singley v. Smith, 844 So.2d 448, 453(¶ 20) (Miss.2003). One is injured in the course of employment when an injury results from activity actuated partly by a duty to serve the employer or reasonably incident to the employment. Id.
¶ 13. Our supreme court has held that a personal-comfort activity of an employee should be compensable if it is reasonably incident to the employment, although not a necessity of it. Collums v. Caledonia Mfg. Co., 237 Miss. 607, 611, 115 So.2d 672, 673 (1959). What is reasonably incidental depends both on the practices permitted in the particular workplace by the employer and on the general customs of the employment environment. Id. Examples of those personal-comfort activities that are reasonably incident to the employment include: (1) brushing teeth, (2) drinking water, (3) going to the bathroom, (4) smoking a cigarette, and (5) so forth. John R. Bradley & Linda R. Thompson, Mississippi Workers' Compensation § 4:34 at 4-51 (Thompson-West 2006).
¶ 14. The ALJ determined that White was engaged in a personal-comfort activity and that the activity was reasonably incident to her employment. The ALJ noted the MDOC's argument that without an actual trauma in the bathroom, the ruptured disc is not compensable because it could have happened elsewhere. The ALJ noted that the definition of "injury" also states that the "[u]ntoward event includes events causing unexpected results." Miss. Code Ann. § 71-3-3(b). Although White did not specifically tell someone on the day of the injury that she slipped and fell, Officer Berry did testify that White, after leaving the bathroom, told her she had hit her back on the toilet.
¶ 15. The Commission stated that "the record indicates [White] had a degenerative condition which might have been *623 brought to the acute stage by any one of a number of everyday motions, at home or at work." This statement by the Commission is unsupported by the record. White did have pre-existing back problems, but Dr. Windham testified that those pre-existing problems did not cause the disc rupture. Dr. Windham stated that White's prior history of degenerative disc disease and osteoarthritis were insignificant in regard to his diagnosis of an acute lumbar disc rupture.
¶ 16. The Commission further stated the following: "We likewise are not persuaded that [White] herniated a disc while standing up, or sitting down, or doing anything else that may be considered work related . . . and were it not for the stipulation,. . . we likely would find that nothing at all happened at work." Although White never specifically told anyone on the day of the injury that she "slipped and fell," testimony from Officer Berry corroborates White's testimony that she was injured while in the bathroom. Officer Berry testified that prior to entering the bathroom, White was acting like her usual self. Officer Berry testified that she saw White limping immediately after exiting the bathroom. Officer Berry stated that White could not stand on her own and that she was crying hysterically. Officer Berry stated that White "was in pain. She was hollering and crying. . . . [h]er foot seemed like it was paralyzed." Dr. Windham testified that White presented with "severe weakness of extension of her right toe and ankle, almost a complete foot drop. She had sensory loss. She had a severe restriction of straight leg raising." Dr. Windham stated that these symptoms were compatible with a disc rupture.
¶ 17. The Commission was concerned that White did not report her injury as a workers' compensation case immediately. The Commission stated that this undermined White's credibility. However, White did report her injury as a workers' compensation claim after discussing the circumstances with Philley, the MDOC workers' compensation representative. We are mindful that "[t]he Workers' Compensation Act is construed liberally, and doubtful cases are to be resolved in favor of compensation so that the beneficent purposes of the act may be achieved." Robinson v. Packard Elec. Div., Gen. Motors Corp., 523 So.2d 329, 332 (Miss.1988). Since White had filed two prior workers' compensation claims, White testified that she did not immediately file a work-related injury report because she did not think using the bathroom was work related. We resolve any doubt as to White's failure to immediately file a work-related injury report in favor of White.
¶ 18. After considering the evidence and the entire record, we are of the opinion that the Commission's denial of workers' compensation benefits was not supported by substantial evidence and that the trial court erred in affirming the Commission's decision. Therefore, we reverse the judgment of the trial court and remand the case back to the Mississippi Workers' Compensation Commission for a determination of benefits.
¶ 19. THE JUDGMENT OF THE SUNFLOWER COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED TO THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, *624 J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ISHEE, J.
CARLTON, J., Dissenting:
¶ 20. Because I find the majority's analysis in this case exceeds this Court's scope of review, I must respectfully dissent. I find ample evidence in the record to support the Commission's finding that White failed to satisfy her burden of proof that she experienced a compensable injury to her back. Therefore, I would affirm the trial court's judgment, which affirmed the Commission's denial of benefits.
¶ 21. This Court's standard of review in a workers' compensation appeal is limited. This Court must determine only whether the decision of the Commission is supported by substantial evidence. Casino Magic v. Nelson, 958 So.2d 224, 228(¶ 13) (Miss.Ct.App.2007) (citing Westmoreland v. Landmark Furniture, Inc., 752 So.2d 444, 447(¶ 7) (Miss.Ct.App.1999)). "The Commission sits as the ultimate finder of facts; its findings are subject to normal, deferential standards upon review." Id. (citing Natchez Equip. Co. v. Gibbs, 623 So.2d 270, 273 (Miss.1993)). Because our review is limited, this Court "will only reverse the Commission's rulings where findings of fact are unsupported by substantial evidence, matters of law are clearly erroneous, or the decision was arbitrary and capricious." Id. (citing Westmoreland, 752 So.2d at 448 (¶ 8)). We maintain this deferential standard of review even when we would have been persuaded to rule otherwise if we had been the fact-finder. Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss.1994) (quoting Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988)). Though we defer to the Commission's findings of fact, "[w]e review the Commission's application of the law de novo." Univ. of Miss. Med. Ctr. v. Smith, 909 So.2d 1209, 1218 (¶ 30) (Miss. Ct.App.2005) (citing ABC Mfg. Corp. v. Doyle, 749 So.2d 43, 45 (¶ 10) (Miss.1999)).
¶ 22. Mississippi Code Annotated section 71-3-7 (Rev.2000) provides, in part, the following regarding compensation for workplace injuries:
Compensation shall be payable for disability or death of an employee from injury or occupational disease arising out of and in the course of employment, without regard to fault as to the cause of the injury or occupational disease. An occupational disease shall be deemed to arise out of and in the course of employment when there is evidence that there is a direct causal connection between the work performed and the occupational disease.

(Emphasis added).
¶ 23. Mississippi Code Annotated section 71-3-3(b) (Rev.2000) defines "injury," in part, as follows:
accidental injury or accidental death arising out of and in the course of employment without regard to fault which results from an untoward event or events, if contributed to or aggravated or accelerated by the employment in a significant manner. Untoward event includes events causing unexpected results. An untoward event or events shall not be presumed to have arisen out of and in the course of employment, except in the case of an employee found dead in the course of employment.
(Emphasis added).
¶ 24. Furthermore, the supreme court articulated the following burden of proof in a workers' compensation case:
In a workers' compensation case, the claimant bears the burden of proving by a "fair preponderance of the evidence" each element of the claim. These elements are: (1) an accidental injury, (2) arising out of and in the course of employment, *625 and (3) a causal connection between the injury and the death or claimed disability.
Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 13 (Miss.1994).
¶ 25. The employer concedes that White's injury occurred during the course of her employment, leaving the Commission to determine only whether the injury "arose out of" White's employment. To arise out of employment, an injury must bear some causal connection between the employment and the injury. Big "2" Engine Rebuilders v. Freeman, 379 So.2d 888, 890 (Miss.1980). Injuries may occur "in the course of" employment when the injury is the result of an activity that "(1) in its overall contours [is] actuated at least in part by a duty to serve the employer, or (2)[is] reasonably incidental to the employment." Id.
¶ 26. White argues that under the personal-comfort doctrine, her injury is compensable. Under the personal-comfort doctrine, injuries that result from an employee's attending to her personal needs are compensable when reasonably incidental to her employment duties. See John R. Bradley & Linda R. Thompson, Mississippi Workers' Compensation § 4:34 (Thompson-West 2006). Personal-comfort activities are not necessarily activities required by the employment duties, but which occur while the employee is on the employer's premises during working hours. Id. Activities contemplated under the personal-comfort doctrine include, among other activities, using the restroom on the employer's premises. Id.
¶ 27. White asserts that she presented undisputed proof that she slipped while seating herself on the toilet and then immediately felt pain. If White slipped and hit her back against the toilet, as she alleges, her injury is compensable. See Smith v. Container Gen. Corp., 559 So.2d 1019, 1022 (Miss.1990) (finding injury compensable where employee hit a wooden pallet and employer's concrete floor as a result of alcohol-withdrawal syndrome); Dependents of Chapman v. Hanson Scale Co., 495 So.2d 1357, 1360-61 (Miss.1986) (finding death compensable where deceased suffered a seizure and struck his head on the employer's concrete floor); c.f. Malone & Hyde of Tupelo, Inc. v. Hall, 183 So.2d 626, 629-30 (Miss.1966) (finding no causal connection between employee's sneezing and subsequent back injury and his employment).
¶ 28. While I agree that White's injury would be compensable if she fell against the toilet on the employer's premises, I am mindful that the determination of whether White hit her back against the toilet is a matter of fact for the Commission to determine.[1] Our standard of review in a *626 workers' compensation case is limited to determining whether substantial evidence exists in the record to support the Commission's decision. Franks v. Foam Craft, 929 So.2d 350, 353(¶ 12) (Miss.Ct.App. 2006).
¶ 29. After considering the testimony and the medical records in this case, the Commission made the following findings:
White's version of a March 22, 2005, slip and fall is simply not credible. We likewise are not persuaded that she herniated a disc while standing up, or sitting down, or doing anything else that may be considered work related. We are not at all convinced the disc herniation even occurred at work, and were it not for the stipulation agreed to by the Employer/Carrier, we likely would find that nothing at all happened at work. While the Workers' Compensation Act covers risks which are inherent in the nature of the employment, and even those arising from personal[-]comfort activities such as going to the bathroom, the mere fact that Claimant's disc herniated or became symptomatic while at work does not make her claim compensable.

(Emphasis added). The Commission evaluated the evidence before it and found White's story lacked credibility. Ultimately, the Commission judges the credibility of witnesses. Manning v. Sunbeam-Oster Household Prods., 979 So.2d 736, 740 (¶ 13) (Miss.Ct.App.2008) (citing Barber Seafood, Inc. v. Smith, 911 So.2d 454, 461 (¶ 27) (Miss.2006)).
¶ 30. I find ample evidence in the record to support the Commission's finding that White did not suffer a slip and fall accident while in the restroom on the employer's premises. The record reflects that White never reported to any of her doctors that she had fallen at work. She simply told the doctors that she had experienced pain when getting up from the toilet. White did not inform her supervisor, Lt. Rebecca Blount, that she suffered a fall in the restroom, even though she testified that she considered Lt. Blount a friend. White failed to report her injury as being work-related until months after it occurred. Further, even though Officer Berry testified that White told her she had fallen in the restroom, Officer Berry did not report the incident to her supervisors until the same day White reported the incident.
¶ 31. White contends that her injury is compensable regardless of whether she fell and hit the toilet or whether her injury occurred as she stood up from the toilet. The administrative law judge found that White was engaged in a personal-comfort activity at the time of her injury and that her injury was compensable regardless of whether or not she experienced an actual trauma in the restroom. I agree that White's injury falls under the personal-comfort doctrine for determining whether her injury arose in the course of her employment. However, White still must show a causal connection between her employment and her injury to satisfy the "arising out of" portion of the statute. See Big "2" Engine Rebuilders, 379 So.2d at 890. White fails to satisfy this requirement. Because the Commission, as the ultimate fact-finder, determined that White's injury did not result from a fall, we are left with an injury, a herniated disc, that occurred, by coincidence, in the employer's restroom.
¶ 32. The employer points this Court to several cases in other jurisdictions which have dealt with similar issues. I find those cases instructive in White's case. The Arizona Court of Appeals addressed a *627 nearly identical situation in Sacks v. Industrial Commission, 13 Ariz.App. 83, 474 P.2d 442 (1970). The claimant in Sacks suffered a herniated disc while arising from a toilet on the employer's premises. Id. at 442. The claimant, like White, had a pre-existing back condition. Id. The Sacks court addressed whether the injury was one "arising out of" the claimant's employment. Id. Recognizing that her injury occurred in the course of her employment under the personal-comfort doctrine, the court of appeals still found no causal connection between Sacks's work and her injury. Id. at 443. The court denied compensation and gave the following explanation:
It does not appear that the risk of disc herniation while arising from a toilet was a risk in any way peculiar to or increased by petitioner's employment. There is no suggestion that the structure or condition of any of the surroundings contributed in any way to the unfortunate event. . . . The mere fact that the accident occurred on the premises of the employer during working hours does not make it compensable.
Id. Like the claimant in Sacks, White has proven no defect with the toilet or in the bathroom which contributed to her injury.
¶ 33. The Florida Supreme Court addressed another case with similar facts. In Southern Bell Telephone and Telegraph Co. v. McCook, 355 So.2d 1166 (Fla.1977), the Florida Supreme Court denied benefits to a claimant, McCook, who injured her back as she bent over while seated on the toilet in the employer's restroom. Id. at 1167. McCook had a congenital abnormality in her back; bending down while seated on the toilet triggered her condition. Id. The Florida court adopted the reasoning of the Arizona Court of Appeals in Sacks and found that McCook's injury did not arise out of her employment because there was no causal connection between her employment and her injury. Id. at 1169. See also Miedema v. The Dial Corp., 551 N.W.2d 309, 312 (Iowa 1996) (holding that claimant's back injury arose in the course of employment, but it did not arise out of his employment).
¶ 34. The record leaves me with no doubt that White suffers from a debilitating condition which prevents her from returning to regular employment. However, I am, as the other members of this Court, limited to an examination of the evidence in the record to determine not whether her injury arose out of and in the course of her employment, but whether substantial evidence exists in the record to support the Commission's determination that it did not. See Casino Magic, 958 So.2d at 228 (¶ 13) (citing Westmoreland, 752 So.2d at 447 (¶ 7)). Therefore, for the reasons stated, I would affirm the trial court's judgment, which affirmed Commission's determination that White's injury did not arise out of her employment with the MDOC.
ISHEE, J., JOINS THIS OPINION.
NOTES
[1] The Mississippi Workers' Compensation Act (the Act) is a remedial statute, and as such, it should be construed fairly to promote its beneficent purpose. Big "2" Engine Rebuilders, 379 So.2d at 889 (citations omitted). However, questions of law, such as interpretation of the Act, differ from factual determinations by the Commission. The supreme court in Big "2" Engine Rebuilders distinguished between broadly interpreting the language of the Act and the appellate courts' deferential standard of review regarding questions of fact determined by the Commission. Id. at 890-91. The Big "2" Engine Rebuilders court examined the statutory language of the Act in explaining that the broadly construed words of causation, such as "arising out of," require a nexus between the injury and the employment. Id.

While noting the intent of a broad interpretation of the Act, the supreme court provided that the base-line was a "rational connection" between the employment and the injury, and the question of whether a causal connection existed constituted a question of fact, not law. Id. at 891 (citing Barry v. Sanders, 211 Miss. 656, 52 So.2d 493 (1951) (finding that whether the claimant was assaulted because of his employment was a question of fact for the Commission to determine).