64 So.3d 526 (2011)
MISSISSIPPI SECURITY POLICE and Commerce and Industry Insurance Company, Appellants
v.
Susan PATTERSON, Appellee.
No. 2009-WC-01511-COA.
Court of Appeals of Mississippi.
March 15, 2011.
Rehearing Denied June 28, 2011.
Jeffrey Stephen Moffett, Ridgeland, attorney for appellant.
Jackye C. Bertucci, attorney for appellee.
EN BANC.
LEE, C.J., for the Court:

PROCEDURAL HISTORY
¶ 1. Susan Patterson suffered a work-related injury on November 19, 2005, when she stepped out of a vehicle provided by her employer, Mississippi Security Police (MSP), and hurt her back. On March 31, 2006, Patterson filed a petition to controvert with the Mississippi Workers' Compensation Commission (Commission) claiming to have sustained a loss of wage-earning capacity due to her injury. MSP denied that Patterson had suffered a work-related injury.
¶ 2. After a hearing, the administrative judge (AJ) determined that Patterson had suffered a work-related injury and was entitled to all benefits and reasonable and necessary medical treatment. MSP appealed this decision to the Commission. After hearing arguments, the Commission affirmed the decision of the AJ. MSP then filed an appeal to the Jackson County Circuit Court. The trial court affirmed the decision of the Commission.
¶ 3. MSP now appeals, asserting that the Commission's decision was not supported by substantial evidence. Finding no error, we affirm.

*527 FACTS
¶ 4. On November 19, 2005, Patterson was attempting to step out of the truck provided by MSP when she felt something pull. Patterson was working in Pascagoula, Mississippi, as a security guard. Patterson testified that she had trouble exiting the truck because the cab was high off the ground, and there was no side step. Patterson finished her shift and returned to work the next day. Patterson reported her injury to her supervisor, Brook Walters, the day after her injury. Patterson stated that Walters laughed at her; responded "oh, you didn't hurt yourself"; and drove away. James Wilson, Patterson's co-worker at the time, heard Patterson tell Walters she had hurt her back. Wilson heard Walters tell Patterson that he did not believe her and would not give her an incident report. Wilson also stated that he had trouble getting in and out of the company truck because of his height.
¶ 5. According to Patterson's medical history, she had suffered from intermittent low-back problems several years in the past. Patterson testified that these problems stemmed from endometriosis and uterine cancer. Patterson also underwent gastric bypass surgery in January 2005.
¶ 6. Although her back got progressively worse, Patterson continued to work. Patterson first sought treatment from Dr. Paul Fineburg, a family medicine physician, on December 20, 2005. Dr. Fineburg ordered an MRI, but Patterson had to reschedule. Dr. Fineburg opined that Patterson had sciatic inflammation and placed her on anti-inflammatories, muscle relaxers, and pain medication. Dr. Fineburg saw Patterson again on January 3, 2006. Patterson's pain had increased, and she was having difficulty rising from chairs.
¶ 7. Dr. Fineburg opined that Patterson "had some back problems initially, but apparently these were made acutely worse by some incident at work that resulted in the requirement for emergency back surgery." Dr. Fineburg noted that at the time of his opinion that Patterson's injury was work related; however, he had not reviewed records by Patterson's neurosurgeon, Dr. John McCloskey.
¶ 8. On January 24, 2006, Patterson underwent emergency surgery for acute cauda equina syndrome. Dr. McCloskey performed the surgery. Dr. McCloskey testified that he did laminectomies at L3-4 and L4-5 on the right and removed an enormous disc herniation at L3-4. Patterson saw Dr. McCloskey again on March 2, 2006. Dr. McCloskey stated that Patterson continued to have pain in her right buttock and persistent numbness in her right foot. Patterson also continued to have bilateral foot drops. At the time, Dr. McCloskey thought Patterson would be permanently disabled. Dr. McCloskey performed a second surgery on Patterson on March 30, 2006, to remove another large disc herniation at L3-4.
¶ 9. There are some inconsistencies in Patterson's testimony as to when she informed both Dr. Fineburg and Dr. McCloskey about her injury. From the record, it appears Dr. Fineburg was not told the specifics of Patterson's injury until March 2006. Dr. McCloskey testified that Patterson informed him of her work-related injury during her hospitalization after her first surgery on January 24, 2006. Dr. McCloskey opined that Patterson's disc herniation was caused, aggravated, or accelerated by her injury at work.
¶ 10. Timothy Jesperson, the human-resources director for MSP, testified that he met with Patterson on February 3, 2006, regarding her termination. Jesperson informed Patterson that she had missed more than three consecutive days and did not qualify for leave under the Family Medical Leave Act. There was a *528 conversation between the two concerning whether MSP accommodated workers. Patterson reportedly stated at some point, "I never said it wasn't a workers' compensation claim." Jesperson said he advised Patterson to fill out a workers' compensation claim right then, but she declined. Jesperson received notice in March 2006 of a possible workers' compensation claim. Patterson denied meeting with Jesperson. Patterson testified that this conversation occurred over the phone. Patterson further stated that Jesperson told her she could not file a workers' compensation claim because it had been too long since her injury.

STANDARD OF REVIEW
¶ 11. The standard of review in workers' compensation cases is well established. The decision of the Commission will be reversed only if it is not supported by substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law. Weatherspoon v. Croft Metals, Inc., 853 So.2d 776, 778 (¶ 6) (Miss. 2003) (citing Smith v. Jackson Constr. Co., 607 So.2d 1119, 1124 (Miss.1992)). We will exercise de novo review on matters of law. KLLM, Inc. v. Fowler, 589 So.2d 670, 675 (Miss.1991).

DISCUSSION
¶ 12. In its only issue on appeal, MSP argues that the Commission's decision was not supported by substantial evidence. Specifically, MSP contends that Patterson's testimony was not credible because she failed to inform Dr. Fineburg during her first visit with him that she injured her back at work.
¶ 13. The AJ noted that Patterson's testimony contained several inconsistencies. However, the AJ found that based upon the evidence presented, it was reasonable to find that Patterson did suffer a work-related injury on November 19, 2005. The AJ based her decision on the following: Wilson's testimony that he heard Patterson report the injury to her supervisor; Dr. Fineburg's opinion that Patterson's initial back problems were made acutely worse by the work injury that resulted in the need for surgery; and Dr. McCloskey's opinion that the disc herniation that necessitated Patterson's surgeries was caused, aggravated, or accelerated by her work injury. The Commission and the trial court agreed with the AJ's decision.
¶ 14. We are mindful that "[t]he Workers' Compensation [Act] is construed liberally, and doubtful cases are to be resolved in favor of compensation so that the beneficent purposes of the act may be achieved." Robinson v. Packard Elec. Div., Gen. Motors Corp., 523 So.2d 329, 332 (Miss.1988). We find that there was substantial evidence to support the Commission's decision. Therefore, we affirm the judgment of the trial court.
¶ 15. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION.
CARLTON, J., dissenting:
¶ 16. I respectfully dissent from the majority's opinion. I concur with the reasoning set forth by Workers' Compensation Commission Chairman Liles Williams in his dissent to the Full Commission Order, wherein he states the following:
My two colleagues have voted to affirm the April 14, 2208[sic] Order of the Administrative Judge which found the *529 claimant sustained a compensable back injury on or about November 19, 2005. Even to the Administrative Judge, this is a doubtful claim with a number of inconsistencies in the evidence regarding the occurrence of this alleged injury. I would argue that not only is this a doubtful claim, it is downright hard to believe, and is not supported [by] a preponderance of the credible evidence.
The Claimant first sought medical treatment for a back problem a month after the alleged occurrence on December 20, 2005. According to the doctor's notes of this visit, the Claimant reported that her back began hurting "a week ago" with no "specific injury or inciting event" to blame. Claimant herself testified she hurt her back specifically on November 19, 2005 when stepping [down] from a truck. The claimant denied this is the history she gave to Dr. Fineburg on December 20, even though Dr. Fineburg dictated these notes in the presence of the Claimant on December 20.
The Claimant also has a long and well[-]documented history of back pain, dating back to 2001, as reflected by the medical records of Singing River Hospital and University Medical Center. Claimant, of course, denies these records are accurate, and even denies any recollection of these hospital visits which occurred from October 2001 through October 2004.
The Claimant continued to work until January 20, 2006. From the time she first saw Dr. Fineburg on December 20, 2005, until she quit work on January 20, 2006, she never once related anything to her employer about a work[-]related back injury. Moreover, she reported to the local hospital on January 22 with a worsening of her back condition over the previous day and a half, but without any mention of an injury, work related or otherwise. It apparently wasn't until the Employer contacted her on January 31, 2006 about her prolonged absence that she attempted to claim her condition was work related, although the Employer representative at the time testified that Ms. Patterson refused to say specifically what kind of work[-]related accident she had.
There are other flagrant inconsistencies in the Claimant's story which need not be repeated here. Suffice it to say that the Claimant had the burden of proving by a preponderance of the credible evidence that she sustained a work[-]related back injury. In my opinion, she failed miserably, and not even the principle that doubtful cases should be resolved in favor of compensation is enough to compensate for the lack of credible evidence in her favor. I would reverse the Order of the Administrative Judge, and deny this claim accordingly.
¶ 17. Based upon the foregoing, I respectfully dissent. I agree with Commissioner Williams's dissent finding that Susan Patterson failed to meet her burden of proving by a preponderance of the credible evidence that she sustained a work-related injury.