WILSON, J., FOR THE COURT:
 

 ¶ 1. The Mississippi Workers' Compensation Commission denied Charles Wright's claim for disability benefits after finding that he failed to meet his burden of proving a causal connection between his employment and a disabling condition. On appeal, Wright argues that the Commission's decision should be reversed because it is not supported by substantial evidence. Wright also argues that the Commission erred by quashing a subpoena that he served on Dr. Rahul Vohra, who had performed an employer's medical examination
 (EME) in this case. The subpoena sought documents and other information concerning Dr. Vohra's compensation in an effort to demonstrate bias. Wright further argues that the Commission erred by denying his motion to exclude Dr. Vohra's testimony after Dr. Vohra refused to answer deposition questions on matters covered by the subpoena. Finally, Wright argues that the Commission erred by ordering his attorney to pay Dr. Vohra's attorney's fees and a $5,000 "civil penalty" as sanctions for the subpoena and deposition questioning of Dr. Vohra.
 

 ¶ 2. We hold that the Commission's decision is supported by substantial evidence and that the Commission did not commit any reversible error by quashing the subpoena or by denying Wright's motion to exclude Dr. Vohra's testimony. Therefore, we affirm the Commission's decision denying Wright's claim for benefits. However, we hold that the Commission erred by sanctioning Wright's attorney. Therefore, we reverse and render the Commission's imposition of a civil penalty and award of attorney's fees.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 3. Wright worked as an auto mechanic at Turan Foley Motors in Gulfport. He had forty-two years of experience in the industry and specialized in front suspension. Wright testified that on Friday, October 25, 2013, he was busier and his work was more strenuous than usual because General Motors was having "vibration issues" in some of its newer vehicles. The next morning, he woke up with pain in his back and knees, and his right knee was swollen. Wright was not scheduled to work that weekend, but he went in to work and left a note to report the injury. Wright did not experience any fall, accident, or other traumatic event at work, but he assumed that the pain and swelling were caused by the strain of his work. On Monday, October 28, Wright went to see his pain management doctor, Dr. Brian Dix. Wright had been seeing Dr. Dix for back and knee pain three to four times a year for several years, and he had already scheduled an appointment with Dr. Dix for October 28 prior to his alleged injury on October 25.
 
 [1]
 

 ¶ 4. After seeing Dr. Dix, Wright continued working at Turan Foley without restriction. On December 5, 2013, Wright reported that he felt a sharp pain in his left knee as he was sliding out from underneath a car. Wright did not see a doctor about his knee until his next regularly scheduled appointment with Dr. Dix on January 14, 2014. Wright next went to see an orthopedist, Dr. George Salloum, in April 2014.
 

 ¶ 5. Wright testified that after the December 5, 2013 incident, his knees became too painful to continue working, and he retired on December 18, 2013, at the age of fifty-nine. However, another employee, Ken Monroe, testified that Wright was already planning to retire by at least November. Wright's supervisor, Ken Riverbank, testified that Wright did not mention any physical problems when he told Riverbank that he was retiring.
 

 ¶ 6. On September 16, 2014, Wright filed a petition to controvert, alleging that he suffered compensable injuries to his back and lower extremities in October 2013. Turan Foley
 
 [2]
 
 denied that Wright had suffered
 any compensable injury, and the case proceeded to a hearing on the merits of Wright's claim, held before an Administrative Judge (AJ) on September 24, 2015. Wright, Monroe, and Riverbank testified at the hearing, and the parties stipulated that Wright's wife would corroborate his testimony about his injuries and back and knee pain. Wright's deposition and medical records and Dr. Dix's deposition were also admitted into evidence. The AJ left the record open only for the deposition testimony of Dr. Rahul Vohra, who had performed an employer's medical examination (EME).
 

 ¶ 7. Dr. Dix is board certified in osteopathic medicine and anesthesiology and specializes in pain management. He has treated Wright regularly since Wright came to him with back pain, knee pain, and leg pain (radiculopathy ) in 2002. Wright was already wearing a back brace and two knee braces in 2002, and Dr. Dix prescribed him medication and recommended epidural steroid injections for his pain. By 2005, Wright had suffered two herniated discs in his lower back, and he was offered surgery but declined. Dr. Dix testified that "the natural progression" of Wright's injuries would be "to get progressively worse, irregardless of what you do." In 2008, Dr. Dix saw Wright for additional bilateral knee pain, and he referred Wright to an orthopedist for treatment. Dr. Dix recommended a different, more supportive type of back brace in 2009.
 

 ¶ 8. Dr. Dix continued treating Wright for the same conditions for the next few years and on October 28, 2013, he observed swelling in Wright's right knee but no other changes to the condition of Wright's knees or back. Dr. Dix again referred Wright to an orthopedist.
 

 ¶ 9. In a written questionnaire dated May 12, 2015, Dr. Dix answered "Yes" to the question, "Do you feel that Mr. Wright's injuries and your treatment are causally related to his employment and work injury at Turan Foley Motors, Inc.?" In his deposition, Dr. Dix testified that the "work injury" to which his answer referred was a 2003 work injury. In the questionnaire, Dr. Dix also explained his "Yes" answer by stating that Wright's herniated discs, which Wright suffered no later than 2005, "occurred most likely while working."
 
 [3]
 

 ¶ 10. Dr. Salloum also treated Wright for knee pain in 2011 and 2014. Dr. Salloum's records were admitted into evidence, but Dr. Salloum did not testify. In an April 2014 progress note, Dr. Salloum stated that Wright had "severe tricompartmental osteoarthritic changes in both knees," and he recommended injections in both knees. Dr. Salloum also stated that Wright ultimately might require a left knee replacement.
 

 ¶ 11. Dr. Vohra examined Wright in June 2015. Dr. Vohra reviewed Wright's medical records, a 2005 MRI, and lumbar and knee x-rays taken on the day of the examination. Dr. Vohra's EME report discussed Wright's significant history of back and knee pain issues dating back to at least 2002. Dr. Vohra also noted that Wright received bilateral knee injections in 2011.
 

 ¶ 12. Dr. Vohra concluded that Wright's "current back pain complaints are consistent with the ongoing back pain he has had since 2002." Dr. Vohra found "no evidence that there has been any material change in
 [Wright's] clinical condition." Rather, Wright "continues to have chronic mechanical back pain," which "is a longstanding preexisting issue."
 

 ¶ 13. Dr. Vohra also concluded, based on his review of Wright's medical records and x-rays, that Wright's knee pain was the result of "chronic degenerative changes" and not the result of "any accident or injury at work" in 2013. Dr. Vohra found that Wright had "no impairment or restrictions based on an alleged work incident." Dr. Vohra agreed with Dr. Salloum that Wright needed a left knee replacement surgery, but Dr. Vohra concluded that Wright's left knee condition was "not related to a work issue."
 

 ¶ 14. Dr. Vohra's deposition testimony was consistent with his EME report. Dr. Vohra testified that Wright's back and knee conditions were degenerative and preexisting and were not caused or aggravated by any incident or injury at work in 2013. He also testified that the knee swelling that Wright experienced in October 2013 was consistent with the arthritic condition of his knees. Dr. Vohra testified that a strenuous day at work in October 2013 might have "exacerbate[d]" Wright's condition, but it would not have "aggravate[d] it." Dr. Vohra explained that an "[e]xacerbation is a temporary increase in symptoms from an underlying ... condition," whereas an "aggravation is an event that actually changes the course of the underlying" condition.
 

 ¶ 15. Prior to Dr. Vohra's deposition, Wright served him with a subpoena that commanded him to produce several categories of documents, primarily related to his compensation for performing EMEs or independent medical examinations (IMEs) or testifying as an expert witness. Turan Foley had designated Dr. Vohra to conduct an EME by at least April 13, 2015,
 
 [4]
 
 and Dr. Vohra examined Wright and issued his report on June 5, 2015. Nonetheless, Wright did not serve Dr. Vohra with a subpoena until October 22, 2015-nearly a month after the merits hearing before the AJ.
 

 ¶ 16. Dr. Vohra retained counsel who entered an appearance and filed a motion to quash the subpoena or for a protective order. Dr. Vohra argued that the subpoena sought irrelevant information, was overly broad and unduly burdensome, and was intended "to harass and intimidate [him] in an attempt to discourage him from" participating in workers' compensation cases. Turan Foley filed a joinder in Dr. Vohra's motion. Wright filed a response to Dr. Vohra's motion. Wright also filed a motion to strike the entry of appearance entered by Dr. Vohra's lawyers, arguing that an attorney for a nonparty is not entitled to enter an appearance in a proceeding before the Commission.
 

 ¶ 17. Dr. Vohra was deposed on November 3, 2015, while his motion to quash was still pending. In his deposition, Dr. Vohra acknowledged that in a prior, unrelated case he voluntarily produced a list of all IMEs and EMEs he had performed in 2012 and 2013 with the amount and source of his compensation for each examination. The list, which was made an exhibit to Dr. Vohra's deposition in this case, showed total compensation of $603,466 for the two-year period, all paid by employers or carriers. Dr. Vohra testified that it had been an "[e]normous task" to compile the information, requiring "[d]ays" of work by "several people." He testified that he was unwilling to make such disclosures again
 voluntarily, which was why he hired counsel to oppose the subpoena. Wright's attorney asked Dr. Vohra whether he had ever done any work for any claimant's attorney, and Dr. Vohra could identify only three. Other than confirming that the list was the same document that he had provided in a prior case, Dr. Vohra refused, on advice of counsel, to answer any questions on subjects covered by the pending motion to quash. After Dr. Vohra's deposition, Wright filed a motion to exclude or strike Dr. Vohra's deposition based on his refusal to answer questions.
 

 ¶ 18. The AJ subsequently entered a forty-one page order denying Wright's claim. The AJ found that Wright "failed to meet his burden of proof that he suffered work related injuries to his back and/or knees." The AJ found that the evidence was "clear that [Wright] had a long history of back and knee problems and had received extensive treatment in the past," and "[w]hile his arthritis and underlying conditions may have worsened over the years, his diagnosis remained essentially the same." The AJ's opinion also discussed Dr. Vohra's testimony that Wright's injuries were not related to his work.
 

 ¶ 19. The AJ also entered an order quashing Wright's subpoena to Dr. Vohra. The AJ acknowledged that Wright was "entitled to explore bias" and that Dr. Vohra's compensation "may be relevant" to that issue. However, the AJ found that the issue had "been sufficiently explored in this case" and that Wright's "oppressive purpose in serving the subpoena [was] clear." The AJ expressed concern that it was already difficult to find physicians willing to perform IMEs and EMEs and that requiring physicians to respond to such subpoenas would deter them from participating in workers' compensation cases. The AJ found that the subpoena should be quashed because it was "unreasonable and oppressive." For the same reasons, the AJ also denied Wright's motion to exclude or strike Dr. Vohra's deposition. Finally, the AJ denied Wright's motion to strike the entry of appearance by Dr. Vohra's counsel.
 

 ¶ 20. Wright filed a petition for review by the full Commission. In his petition, Wright argued that the AJ erred by finding that he failed to prove a compensable injury; by quashing his subpoena to Dr. Vohra; by denying his motion to exclude or strike Dr. Vohra's testimony; and by denying his motion to strike the entry of appearance by Dr. Vohra's counsel. Turan Foley and Dr. Vohra both filed responses to Wright's petition. Dr. Vohra also requested an award of attorney's fees and expenses pursuant to Commission Procedural Rule 18(g).
 

 ¶ 21. The Commission affirmed the AJ's order denying Wright's claim. The Commission reviewed the testimony and medical evidence and agreed with the AJ that Wright failed to meet his burden of proving any compensable injury. The Commission's opinion also "affirm[ed] and incorporate[d] the findings of the [AJ]."
 

 ¶ 22. The Commission also affirmed the AJ's orders related to the subpoena and deposition of Dr. Vohra. As to the subpoena, the Commission "agree[d] with the findings of the [AJ]," including that "the issue of bias had been sufficiency explored." The Commission "further [found] that the discovery sought by [Wright] from Dr. Vohra was not 'relevant or competent evidence' necessary for the resolution of the present claim." (Quoting Commission Procedural Rule 8(g)). As to the motion to exclude or strike Dr. Vohra's deposition, the Commission agreed with the AJ that "the financial information sought by [Wright's] counsel was oppressive and not necessary for resolution of the claim."
 

 ¶ 23. The Commission also sanctioned Wright's attorney, ordering him to pay Dr. Vohra's attorney's fees and "an additional civil penalty" of $5,000. The Commission imposed the sanctions pursuant to Commission Procedural Rule 18(g) and Mississippi Code Annotated section 71-3-59(2) (Rev. 2011). The Commission reasoned that sanctions were appropriate because the subpoena and deposition questioning of Dr. Vohra were "unwarranted and oppressive in nature and without reasonable ground" and were directed to "financial issues not related to the claim."
 

 ¶ 24. Wright filed a notice of appeal from the final decision of the Commission. Both Turan Foley and Dr. Vohra have filed briefs as appellees.
 

 ANALYSIS
 

 ¶ 25. On appeal, Wright argues that the Commission's decision on the merits of his claim was not supported by substantial evidence. Wright also raises multiple issues related to the subpoena to and deposition of Dr. Vohra. Indeed, most of Wright's opening brief and almost all of his reply brief are devoted to issues related to the subpoena or deposition. He alleges that, at minimum, he is entitled to a "new trial," because the Commission erred by quashing his subpoena and by denying his motion to strike or exclude Dr. Vohra's testimony. He also argues that the Commission erred by imposing sanctions on his attorney. We address these issues in turn.
 

 I. The Commission's decision is supported by substantial evidence.
 

 ¶ 26. In workers' compensation cases, "[t]his Court's review is limited to determining whether the Commission's decision was supported by substantial evidence, was arbitrary and capricious, was beyond the scope or power of the agency to make, or violated [a party's] constitutional or statutory rights .... [T]he Commission is the ultimate fact-finder and judge of the credibility of witnesses; therefore, we may not reweigh the evidence that was before the Commission."
 
 Pulliam v. Miss. State Hudspeth Reg'l Ctr.
 
 ,
 
 147 So.3d 864
 
 , 868 (¶ 16) (Miss. Ct. App. 2014) (citations and quotation marks omitted). "When the Commission's decision is supported by substantial evidence, ... it must be upheld. This remains true even though we might have reached a different conclusion were we the trier of fact."
 
 Parker v. Ashley Furniture Indus.
 
 ,
 
 164 So.3d 1081
 
 , 1083-84 (¶ 11) (Miss. Ct. App. 2015) (quoting
 
 Smith v. Johnston Tombigbee Furniture Mfg. Co.
 
 ,
 
 43 So.3d 1159
 
 , 1164 (¶ 15) (Miss. Ct. App. 2010) ). On issues of fact, "[t]his Court will overturn a Commission decision only" if the Commission's finding is "unsupportable."
 
 Harper ex rel. Harper v. Banks, Finley, White & Co. of Miss. P.C.
 
 ,
 
 167 So.3d 1155
 
 , 1162 (¶ 18) (Miss. 2015) (quoting
 
 Ga. Pac. Corp. v. Taplin
 
 ,
 
 586 So.2d 823
 
 , 826 (Miss. 1991) ).
 

 ¶ 27. In a workers' compensation case, the claimant bears the burden of proving "(1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and ... claimed disability."
 

 Id.
 

 at (¶ 19). "In all but the simple and routine cases, it is necessary to establish medical causation by expert testimony. A claim of disability must be supported by medical findings"
 
 Tate v. Int'l Paper Co.
 
 ,
 
 194 So.3d 136
 
 , 139 (¶ 15) (Miss. Ct. App. 2015) (quoting
 
 Clark v. Spherion Corp.
 
 ,
 
 11 So.3d 774
 
 , 778 (¶ 16) (Miss. Ct. App. 2009) ) (alteration omitted).
 

 ¶ 28. Furthermore, "[w]here there is conflicting medical testimony, the Commission has the responsibility to apply its expertise and determine which evidence is more credible."
 

 Washington v. Woodland Vill. Nursing Home
 
 ,
 
 25 So.3d 341
 
 , 355 (¶ 33) (Miss. Ct. App. 2009) (quoting
 
 Wesson v. Fred's Inc.
 
 ,
 
 811 So.2d 464
 
 , 469 (¶ 23) (Miss. Ct. App. 2002) ). Therefore, "[w]here medical expert testimony is concerned, [the Supreme] Court has held that whenever the expert evidence is conflicting, the Court will affirm the Commission whether the award is for or against the claimant."
 
 Raytheon Aerospace Support Servs. v. Miller
 
 ,
 
 861 So.2d 330
 
 , 336 (¶ 13) (Miss. 2003) (quoting
 
 Kersh v. Greenville Sheet Metal Works
 
 ,
 
 192 So.2d 266
 
 , 268 (Miss. 1966) );
 
 accord
 

 Hardaway Co. v. Bradley
 
 ,
 
 887 So.2d 793
 
 , 796-97 (¶¶ 15-20) (Miss. 2004).
 

 ¶ 29. In the present case, there is substantial evidence to support the Commission's finding that Wright failed to meet his burden of proving that he sustained a work-related injury that aggravated any of his preexisting conditions. Wright acknowledges that he has longstanding, preexisting knee and back issues. And Dr. Vohra testified that Wright's present conditions and pain are the result of those longstanding, chronic, degenerative issues-not any work-related accident or injury in October 2013.
 

 ¶ 30. Moreover, Wright offered no substantial evidence to support a finding of causation. Wright assumes a causal relationship between swelling in his knee and his work the prior day. Wright further assumes that the swelling in his knee reflected an aggravation of his knee condition, rather than just temporary swelling that was a symptom of that preexisting condition. Wright also emphasizes that Dr. Salloum, who did not testify, recommended knee replacement surgery in April 2014. Based on this, Wright assumes that the need for knee replacement surgery must be attributable to his alleged injury in October 2013.
 

 ¶ 31. However, there is no medical evidence or expert opinion to support Wright's assumptions and suppositions. Dr. Vohra testified that although Wright experienced temporary pain and swelling in October 2013, there was no permanent aggravation of his underlying conditions, which remained unchanged. As noted above, Dr. Dix's testimony on the subject was, at best, ambiguous and contradictory. In addition, Dr. Salloum did not testify, and there is nothing in his records to support a finding of causation.
 

 ¶ 32. Given Wright's long history of preexisting back and knee problems, this was far from a "simple and routine case[ ]" on the issue of medical causation.
 
 Tate
 
 ,
 
 194 So.3d at 139
 
 (¶ 15). Therefore, Wright was required "to establish medical causation by expert testimony."
 

 Id.
 

 There is substantial evidence to support the Commission's finding that Wright failed to meet his burden of proof. Moreover, "whenever the expert evidence is conflicting, the Court will affirm the Commission whether the award is for or against the claimant."
 
 Raytheon
 
 ,
 
 861 So.2d at 336
 
 (¶ 13) (quoting
 
 Kersh
 
 ,
 
 192 So.2d at
 
 268 ). Therefore, even if we assume that Wright presented
 
 some
 
 competent evidence of medical causation, it was up to the Commission, as the finder of fact, to determine which evidence was credible and persuasive.
 

 II. The Commission did not err by quashing Wright's subpoena to Dr. Vohra or by denying Wright's motion to strike or exclude Dr. Vohra's deposition.
 

 ¶ 33. In general, evidence of an expert witness's possible financial or economic bias is relevant and admissible. Therefore, an expert witness may be cross-examined about how much he or she has been paid in the pending case, how frequently he or she testifies as an expert, and how often he or she testifies for plaintiffs,
 defendants, doctors, etc.
 
 See
 

 Wells v. Tucker
 
 ,
 
 997 So.2d 908
 
 , 916-17 (¶ 29) (Miss. 2008) (quoting
 
 Wells v. Tucker
 
 ,
 
 997 So.2d 925
 
 , 940 (¶¶ 55-56) (Miss. Ct. App. 2007) (Griffis, J., dissenting)). Our Supreme Court has made clear that "liberal cross-examination regarding bias, interest, and previous experience as an expert ... should be allowed."
 
 McCarty v. Kellum
 
 ,
 
 667 So.2d 1277
 
 , 1286 (Miss. 1995) (quoting
 
 Hall v. Hilbun
 
 ,
 
 466 So.2d 856
 
 , 875 (Miss. 1985) ) (alteration omitted).
 

 ¶ 34. However, this appeal does not involve a simple dispute over the permissible scope of cross-examination of an expert witness. There are two primary rulings at issue in this appeal. First, the Commission declined to compel Dr. Vohra to comply with a subpoena duces tecum (a) that commanded him to produce extensive financial documents and business records, (b) that was overly broad and unduly burdensome on its face, and (c) that Wright served after the hearing on the merits of his claim. Second, the Commission ruled that Dr. Vohra's refusal to answer questions about his income from performing EMEs and providing expert testimony did not warrant the wholesale exclusion of his testimony. For the reasons explained below, we find no reversible error in either of these rulings.
 

 ¶ 35. At the outset, "[w]e emphasize that the Commission is an
 
 administrative agency
 
 , not a court. It has broad discretionary authority to establish procedures for the administration of compensation claims."
 
 Mid-Delta Home Health Inc. v. Robertson
 
 ,
 
 749 So.2d 379
 
 , 387 (¶ 30) (Miss. Ct. App. 1999) (quoting
 
 Delta Drilling Co. v. Cannette
 
 ,
 
 489 So.2d 1378
 
 , 1380-81 (Miss. 1986) ). Therefore, "[i]t is a rare day when we will reverse the Commission for an action taken in the implementation and enforcement of its own procedural rules."
 

 Id.
 

 To be certain, the Commission must ensure that it affords due process to the parties in all cases.
 
 Robinson Prop. Grp. Ltd. P'ship v. Newton
 
 ,
 
 975 So.2d 256
 
 , 260 (¶ 8) (Miss. Ct. App. 2007). However, the Commission has considerable discretion, and its rulings on procedural and evidentiary issues and discovery matters are entitled to deference.
 
 See, e.g.
 
 ,
 
 Rankin v. Averitt Exp. Inc.
 
 ,
 
 115 So.3d 874
 
 , 877 (¶ 13) (Miss. Ct. App. 2013) ;
 
 Robinson Prop. Grp.
 
 ,
 
 975 So.2d at 260
 
 (¶ 8) ;
 
 Bermond v. Casino Magic
 
 ,
 
 874 So.2d 480
 
 , 484-85 (¶ 11) (Miss. Ct. App. 2004) ;
 
 Posey v. United Methodist Senior Servs.
 
 ,
 
 773 So.2d 976
 
 , 979 (¶ 9) (Miss. Ct. App. 2000) ;
 
 Mid-Delta Home Health
 
 ,
 
 749 So.2d at 387
 
 (¶ 29).
 

 ¶ 36. As discussed above, Turan Foley disclosed that it had retained Dr. Vohra to perform an EME in this case by at least April 2015, Dr. Vohra examined Wright and issued his report in June 2015, and the hearing on the merits before the AJ was held in September 2015. The record in the case was then closed and complete with the exception of Dr. Vohra's deposition. Nonetheless, Wright did not serve Dr. Vorha with a subpoena until a month after the hearing before the AJ.
 
 [5]
 
 The subpoena
 sought the following categories of documents:
 

 • all documents indicating any income that Dr. Vohra earned from services rendered by or at the request of Turan Foley or the law firm representing it in the five preceding years;
 

 • copies of any medical malpractice complaint filed against Dr. Vohra in any court;
 

 • "[c]opies of all 1099's, profit and loss statements, internal memoranda or other financial documents which indicate, address or outline the income [that Dr. Vohra had] received from," inter alia, for IMEs or EMEs performed for any employer or carrier and "[a]ny other payments from liability insurance companies for any consultation work" in the five preceding years;
 

 • "[a]ll documents, including receipts for payment, honorariums or reimbursement for travel expenses, for any programs or conferences, sponsored by any liability or workers' compensation insurance company or industry group where [Dr. Vohra had] spoken or presented in the last five (5) years on any issues involving civil justice, [IMEs or EMEs], physical impairment or restrictions and/or rehabilitation of injured patients";
 

 • "[a]ny and all printouts, reports, cancelled checks, drafts, or other documents evidencing, relating or pertaining to any payment of compensation to [Dr. Vohra] to review medical records and/or to render opinions and/or to testify as an expert witness at any court proceeding within the past five years";
 

 • Dr. Vohra's "time sheets and copies of any and all other documentation setting forth the hours for which [he] performed services of any kind in [this] case," as well as all "invoices or documentation of and records of payment received for services rendered in [this] case (including those billed but not yet collected, and those expected to be billed)";
 

 • any learned treatises, articles, or authorities relied on by Dr. Vohra in rendering opinions in this case.
 

 ¶ 37. We agree with the Commission that this command to Dr. Vohra to produce five years' worth of financial documents, including even 1099s and "cancelled checks," was overly burdensome and unduly broad on its face. Therefore, we cannot say that the Commission's ruling quashing the subpoena was an abuse of discretion or a denial of due process or any other right.
 

 ¶ 38. In their briefs on appeal, Dr. Vohra and Wright cite several decisions of courts in other states that have addressed the discoverability of information about the income and sources of income of an expert witness.
 
 [6]
 
 However, the cited opinions are not directly applicable to the facts of this case, which do not involve a typical pretrial discovery dispute. As it was presented to the Commission, the issue in this case was whether to reopen the record in an otherwise-concluded workers' compensation proceeding to compel Dr. Vohra to produce voluminous information and documents pertaining to his income as an expert witness. Moreover, the record already contained evidence that employers and carriers had paid Dr. Vohra over $600,000 for performing IMEs and EMEs in the years
 2012 and 2013. On these facts, the Commission, which was also the finder of fact, affirmed the AJ's finding that "the issue of bias had been sufficiently explored" in this case.
 

 ¶ 39. We cannot say that the Commission's ruling was an abuse of discretion or a denial of due process. The record in the case was otherwise closed by the time the issue was raised, and the Commission, as fact-finder, had before it information that it reasonably deemed sufficient to address the issue of bias. The Commission was not required to reopen the proceeding to compel Dr. Vohra to comply, in whole or in part, with a subpoena that was overly broad and unduly burdensome on its face.
 

 ¶ 40. For essentially the same reasons, the Commission did not abuse its discretion or deny due process when it affirmed the denial of Wright's motion to strike or exclude Dr. Vohra's testimony in toto. The partial dissent argues that Dr. Vohra should have filed a motion to terminate or limit the deposition pursuant to Mississippi Rule of Civil Procedure 30(d) instead of simply refusing to answer certain questions.
 
 [7]
 
 That may be true, but if so, Wright's primary remedy was a motion to compel Dr. Vohra to answer additional questions and for attorney's fees and expenses pursuant to Rule 37(a).
 
 [8]
 
 Wright never requested that relief before the AJ or the Commission. Instead, he sought only to strike or exclude Dr. Vohra's testimony in its entirety.
 
 [9]
 
 Neither Wright nor the partial dissent cites any authority for the proposition that the
 
 only
 
 permissible remedy for a nonparty's refusal to answer deposition questions is to strike or exclude the nonparty's testimony
 
 in its entirety
 
 . There is no such rule of automatic, wholesale exclusion. Wright did not request the relief to which he might have been entitled
 under Rule 37(a), and we cannot say that the Commission abused its discretion or otherwise erred by denying the extraordinary relief that Wright did seek.
 

 ¶ 41. The partial dissent next argues that the Commission should have excluded Dr. Vohra's deposition based on "the four-factor test applicable to determine whether excluding evidence for a transgression in discovery is an appropriate sanction."
 
 Post
 
 at (¶ 59). However, Wright himself has never relied on that test, which addresses the exclusion of evidence as a sanction for a discovery violation by a party. Here, the party-Turan Foley-did not commit any discovery violation. Dr. Vohra was a nonparty witness selected by Turan Foley to perform an EME.
 
 [10]
 
 After Wright served a subpoena on Dr. Vohra personally, Dr. Vohra filed his own motion to quash the subpoena, and he then relied on the advice of his personal counsel to refuse to answer questions on matters covered by his pending motion. "[E]xcluding evidence for a transgression in discovery is an extreme measure."
 
 Miss. Power & Light Co. v. Lumpkin
 
 ,
 
 725 So.2d 721
 
 , 733 (¶ 60) (Miss. 1998). Again, there is no rule requiring a trial judge or an administrative tribunal to impose such an "extreme" sanction on a party based on a nonparty witness's independent decision to refuse to answer deposition questions.
 

 ¶ 42. Finally, the partial dissent argues that the Commission violated its "own procedural rules" by admitting Dr. Vohra's testimony.
 
 Post
 
 at (¶ 61). However, no rule of the Commission required the exclusion of Dr. Vohra's testimony. Put simply, no rule, statute, or precedent required the Commission to impose the "extreme" sanction advocated by the partial dissent. We again note that Wright could have moved to compel Dr. Vohra to answer additional questions and for attorney's fees and costs. Such a motion would have directly addressed the alleged deficiencies in Dr. Vohra's testimony, and some relief might have been warranted. However, Wright did not file such a motion, so that issue is not before us on appeal.
 

 ¶ 43. We also emphasize that an expert witness may be required to testify about how much he or she has been paid in the pending litigation, how often he or she serves as an expert, and how often he or she testifies for plaintiffs/claimants, defendants/employers/carriers, doctors, etc.
 
 See
 

 Wells
 
 , 997 So.2d at 916-17 (¶ 29). These are relevant and permissible questions in a deposition or on cross-examination. However, this appeal does not involve a simple dispute over the permissible scope of cross-examination. For the reasons discussed above, we cannot say that the Commission committed reversible error by quashing Wright's late-served subpoena or denying his motion to exclude Dr. Vohra's testimony in toto.
 
 [11]
 

 III. The Commission erred by sanctioning Wright's attorney.
 

 ¶ 44. As noted above, the Commission also imposed sanctions on Wright's counsel for the subpoena that he served on Dr. Vohra and his deposition questioning of Dr. Vohra. Specifically, the Commission ordered counsel to pay Dr. Vohra's attorney's fees and an "additional civil penalty" of $5,000. The Commission cited Commission Procedural Rule 18(g) and Mississippi Code Annotated section 71-3-59(2) as the basis for these sanctions. While we affirm the decision of the Commission in all other respects, we conclude that the Commission erred by imposing these sanctions on Wright's attorney.
 

 ¶ 45. Section 71-3-59 permits an award of attorney's fees and imposition of an additional "civil penalty" of up to $10,000 only if the Commission finds "that proceedings in respect to a claim have been instituted, continued or delayed, including by way of appeal to the [C]ommission, without reasonable ground."
 
 Miss. Code Ann. § 71-3-59
 
 (2). Commission Procedural Rule 18(g) similarly authorizes an award of attorney's fees only "upon a showing that the subpoena power is being exercised in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the party or the person upon whom the subpoena is served." In an analogous context, our Supreme Court "has held that pleadings found to be justiciable, viable, or colorable are not for the purpose of harassment or delay; thus, sanctions are inappropriate."
 
 Estate of McLemore v. McLemore
 
 ,
 
 63 So.3d 468
 
 , 490 (¶ 68) (Miss. 2011) (applying Mississippi Rule of Civil Procedure 11 ).
 

 ¶ 46. We have held that the Commission did not err by quashing the subpoena to Dr. Vohra or by denying Wright's motion to exclude Dr. Vohra's testimony. However, our holdings on those issues are based in part on the procedural posture in which the issue arose in this case and the Commission's finding that the issue of bias was "sufficiently explored" at Dr. Vohra's subsequent deposition. A party is entitled to explore the possible financial bias of an opposing expert witness and to examine, including his or her compensation in the pending litigation and history of testifying for plaintiffs, defendants, etc.
 
 See
 

 Wells
 
 , 997 So.2d at 916-17 (¶ 29). These were matters that Wright's attorney sought to explore by subpoena and deposition, and the Commission erred to the extent that it considered these issues altogether irrelevant.
 

 ¶ 47. In addition, as Dr. Vohra acknowledges in his brief on appeal, "Mississippi courts have not directly addressed how best to strike a balance between the right of a party to explore an expert's financial bias and the need to avoid overly burdensome discovery directed at such experts."
 
 [12]
 
 Thus, no rules or reported cases
 clearly prohibited the conduct for which the Commission imposed sanctions in this case. Under these circumstances, counsel's efforts to represent his client by exploring the issue of financial bias had at least a "colorable" basis in the law.
 
 Estate of McLemore
 
 ,
 
 63 So.3d at 490
 
 (¶ 68). "[T]hus, sanctions are inappropriate" in this case.
 

 Id.
 

 [13]
 

 CONCLUSION
 

 ¶ 48. For the foregoing reasons, the Commission's decision denying Wright's claim for benefits is affirmed. However, all sanctions that the Commission imposed on Wright's attorney are reversed and rendered.
 

 ¶ 49.
 
 AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
 

 LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES AND GREENLEE, JJ., CONCUR. CARLTON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, J. FAIR AND TINDELL, JJ., NOT PARTICIPATING.
 

 Wright's petition to controvert alleged that his injury occurred on Friday, October 18, but other evidence indicated that October 25 was the relevant day. This discrepancy is not material to any of the issues in this appeal.
 

 Turan Foley's insurance carrier is also a party. We refer to the employer and carrier collectively as Turan Foley.
 

 At oral argument in this Court, counsel for Wright contended that later in his deposition, in response to a leading question, Dr. Dix attributed Wright's condition to the alleged October 2013 injury. However, the testimony cited by counsel appears to address a different exhibit and is, at best, ambiguous.
 

 Turan Foley's pre-hearing statement filed on April 13, 2015, noted that Dr. Vohra's EME was scheduled for June 5, 2015.
 

 On appeal, Wright accuses the Commission of "forc[ing] the natural progression of discovery and litigation to be turned on its head." Reply Br. at 2. Specifically, he accuses the AJ of "refus[ing] to hear arguments on the motion to quash before or during the hearing on the merits," and he claims that the AJ "allowed the record to remain open until the deposition for Dr. Vohra to be taken
 
 before
 
 ruling on whether the subpoena had to be responded to." These criticisms of the Commission and the AJ are unfounded. Wright did not serve the subpoena until after the hearing on the merits, so it would have been
 
 impossible
 
 for the AJ "to hear arguments on the motion to quash before or during the hearing on the merits."
 

 See, e.g.
 
 ,
 
 Primm v. Isaac
 
 ,
 
 127 S.W.3d 630
 
 , 635-37 (Ky. 2004) ;
 
 Elkins v. Syken
 
 ,
 
 672 So.2d 517
 
 , 520-22 (Fla. 1996) ;
 
 see also
 
 Fed. R. Civ. P. 26(a)(2)(B)(v)-(vi) (requiring disclosure of the expert's compensation in the pending case and a list of all cases in which the expert has testified in the previous four years).
 

 See
 
 M.R.C.P. 30(d) ("At any time during the taking of the deposition, on motion of ... the deponent and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent ..., the court in which the action is pending may order the officer conducting the examination to cease forthwith from taking the deposition or may limit the scope and manner of the taking of the deposition ....");
 
 Pilate v. Am. Federated Ins.
 
 ,
 
 865 So.2d 387
 
 , 400 (¶ 68) (Miss. Ct. App. 2004) ("The discovery rules of the Mississippi Rules of Civil Procedure are applicable to litigated workers' compensation claims.").
 

 See
 
 M.R.C.P. 37(a)(2) ("If a deponent fails to answer a question ..., the discovering party may move for an order compelling an answer .... When taking a deposition on oral examination, the proponent of the question may complete or adjourn the examination before he applies for an order."); M.R.C.P. 37(a)(4) ("If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.");
 
 see also
 
 8A Charles Alan Wright, Arthur R. Miller et al.,
 
 Federal Practice and Procedure
 
 § 2116 (3d ed. 2010) ("An alternative method by which a court ruling upon the propriety of the examination may be obtained is by refusal of the witness to answer particular questions, thus provoking a motion under Rule 37(a) to compel an answer.... Although there is thus a substantial preference for requiring that deponents apply to the court for protection rather than simply refusing to answer questions, it is to be hoped that the courts will take a realistic view of the conduct of depositions rather than foreclose deponents' objections in response to motions to compel answers.").
 

 During Dr. Vohra's deposition, Wright's counsel stated that he would file a motion to compel Dr. Vohra to answer additional questions and for costs and attorney's fees; however, in his subsequent motion, Wright requested only that Dr. Vohra's deposition be excluded or stricken in its entirety.
 

 See
 

 Miss. Code Ann. § 71-3-15
 
 (1) (Supp. 2017); Commission General Rule 9; Bradley & Thompson,
 
 Mississippi Workers' Compensation Law
 
 § 5:75 (2017 ed.).
 

 Citing Mississippi Code Annotated section 71-3-55(2) (Rev. 2011), Wright also argues that the Commission's ruling on the subpoena "must be vacated and rendered because the Commission failed to record and transcribe the hearing on the issue." Section 71-3-55(2) provides in relevant part: "Hearings before the [C]ommission shall be open to the public and shall be stenographically reported or recorded and transcribed." In this case, the only "hearings" on Wright's subpoena were a telephonic conference with the AJ and oral argument on Wright's petition for review by the full Commission. No testimony or other evidence was received during either "hearing." We do not understand Wright's argument to be that either of those "hearings"-which apparently consisted only of the arguments of counsel-should have been recorded or transcribed. Wright did not raise that issue before the Commission. Moreover, any lawyers' arguments at those "hearings" would have no impact on this Court's decision on appeal.
 
 See
 

 One 1970 Mercury Cougar v. Tunica Cty.
 
 ,
 
 115 So.3d 792
 
 , 796 (¶ 20) (Miss. 2013) ("No citation of authority is necessary for the fundamental propositions that issues of fact are decided by the weighing of evidence, and that the arguments of counsel are not evidence."). Wright's real argument seems to be that
 
 Dr. Vohra
 
 failed "to make a record" because he failed to introduce sufficient evidence that compliance with the subpoena would have been unduly burdensome. We disagree. In this case, the burden is sufficiently apparent from the face of the subpoena to support the Commission's decision.
 

 We also note that the Federal Rules of Civil Procedure require expert witnesses to disclose "a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition," and "a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B)(v)-(vi). The Mississippi Rules of Civil Procedure do not include a comparable requirement.
 

 We caution that service of a substantially similar subpoena in a future case may warrant sanctions. In most cases, the issue of financial bias can be explored sufficiently by oral or written deposition.
 
 See
 

 Elkins
 
 ,
 
 672 So.2d at
 
 520-22 ;
 
 Primm
 
 ,
 
 127 S.W.3d at 635-39
 
 . Production of an expert witness's financial and business records should be "ordered ... only upon the most unusual or compelling circumstance,"
 
 Elkins
 
 ,
 
 672 So.2d at 521
 
 , such as when a witness is "less than forthcoming" in response to deposition questions,
 
 Primm
 
 ,
 
 127 S.W.3d at 639
 
 . Our holding that sanctions are inappropriate in this case is based in large part on the lack of prior Mississippi precedent on this issue.