# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-WC-01490-COA

**TREMAYNE BURTON**                                                                 **APPELLANT**

**v.**

**NISSAN NORTH AMERICA AND ACE**                                 **APPELLEES**
**AMERICAN INSURANCE COMPANY**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/16/2018 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEY FOR APPELLANT: | YANCY B. BURNS |
| ATTORNEYS FOR APPELLEES: | CLIFFORD B. AMMONS |
| | CLIFFORD B. AMMONS JR. |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED - 03/17/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE J. WILSON, P.J., TINDELL AND C. WILSON, JJ.**

**C. WILSON, J., FOR THE COURT:**

¶1. Tremayne Burton appeals from a final order of the Mississippi Workers' Compensation Commission (Commission). Burton's primary contention is that the Commission committed manifest legal error by finding that he did not sustain a compensable work-related injury on September 29, 2010. Upon reviewing the record, we disagree. Because substantial evidence supports the Commission's order, we affirm.

BACKGROUND AND PROCEDURAL HISTORY

¶2. Burton began working at Nissan North America (Nissan) in 2003. On or about December 8, 2008, he sustained a back injury. Burton was working as a production

technician at this time. According to Burton, when he strained to loosen a bolt with a wrench, he felt a sharp pain in his back, and his legs went numb. Burton testified that he had experienced back pain before this incident, but this occurrence caused more serious pain.

¶3. Following the incident, Burton went to the computer lab; he stayed there and worked, using the computer for the remainder of his shift. When his direct supervisor, Charlotte Aldridge, asked him why he was in the computer lab, Burton allegedly told Aldridge that his back was hurting. According to Burton's testimony, he did not tell Aldridge that he had injured his back *while working* due to fear of losing his job.

¶4. After Burton left work on December 8, 2008, he drove to the MEA Medical Clinic on Ellis Avenue. He arrived at the clinic around closing time and told the staff that he thought he had a urinary tract infection (UTI). Burton testified that he did not see a physician, but a member of the staff gave him a prescription, signed by a physician, to treat a UTI. Burton then went home.

¶5. Once at home, Burton sneezed, which caused an increase in Burton's back pain and leg numbness. Alarmed, Burton's daughter then called an ambulance, which transported Burton to the emergency room (ER) at Central Mississippi Medical Center (CMMC). Following examination, an ER physician diagnosed Burton with a lumbar disc herniation and referred him to Dr. Winston Capel for a neuro-surgical evaluation.

¶6. On December 10, 2008, Dr. Capel performed surgery on Burton's spine, repairing a lumbar disc herniation and removing a disc fragment. On or about January 6, 2009, Burton developed a post-operative staph infection, requiring a second surgery. Following the second

2

surgery, Burton engaged in physical therapy treatment. On March 9, 2009, Dr. Capel released Burton to return to work on "full duty" with no restrictions.

¶7. Sometime after returning to full-duty employment, Nissan transferred Burton to a different job on the "sealer line." According to Burton's testimony, this job was a more difficult one (or a more physical one) than the job he previously held. The new job entailed using a sealer gun to seal various parts of a vehicle, such as sunroofs and gas tanks.

¶8. On September 27, 2010, Burton went to an appointment with Dr. Capel. At the appointment, Burton complained of intermittent back pain and weakness. Dr. Capel's notes from this visit do not make any reference to causation for this pain. On October 5, 2010, Burton visited the Nissan Comprehensive Health Center and reported that on September 29, 2010, he "started having severe gradual onset pain in his back."[1] The providers' notes from Burton's October 5, 2010 visit indicate that Burton "believe[d] his pain is due to bending and reaching overhead to put sealer on the sunroof." On or about October 10, 2010, Nissan terminated Burton for being unable to keep up with the physical demands of his work.

¶9. On October 15, 2010, the Commission received Burton's "First Report of Injury" for the alleged September 29, 2010 injury. On this same date, the Commission also received Nissan's Notice of Controversion, which provided, "[P]er medical provider, condition is personal and idiopathic—not work-related." On October 25, 2010, Burton filed a petition to controvert with the Commission. In the petition, Burton alleged a "low back" injury from

---

[1] There is some discrepancy in the record about when Burton's second alleged injury occurred; the administrative judge's order refers to a "September 27, 2010, work-related injury" rather than one allegedly having occurred on September 29, 2010.

3

"overhead reaching and repetitive motion of bending over."

¶10. Nissan filed an answer to the petition, denying that Burton sustained a work-related injury. On November 8, 2010, Burton filed a second petition to controvert for his previous December 7, 2008 injury. There are discrepancies in the record as to whether this injury occurred on December 7, 2008, or December 8, 2008. Regardless, Burton had not filed a workers' compensation claim for this injury before November 2010. In the second petition, Burton alleged a "lower back" injury; according to Burton he was "changing [a] filter pot with a long wrench" when he "strained [his] back" and his "leg went numb."

¶11. On December 1, 2010, the administrative judge entered an order consolidating the two cases for hearing and discovery purposes. On January 22, 2018, after rescheduling several times, the administrative judge held a hearing on the merits. The following witnesses testified at the hearing:

- Charlotte Aldridge, Burton's direct supervisor in December 2008;

- Angela Malone, Burton's vocational rehabilitation expert;

- Jimmy Holston, Burton's co-worker in December 2008;

- Ray McCleskey, Burton's co-worker in December 2008;

- Venicelon Burton, Burton's wife;

- Burton;

- Lon Pepper, an investigator with Security Investigative Support Services; and

- Kathy Smith, Nissan's vocational rehabilitation counselor/expert.

The parties also entered the following exhibits into evidence:

4

- the deposition of Dr. Kelly Bishop, a family practitioner at MEA Medical Clinic in December 2008;

- the deposition of Winston Capel, M.D., Burton's neurosurgeon;

- the deposition of Howard Katz, M.D., a physical-medicine-and-rehabilitation specialist hired by Burton to perform medical examination and provide opinion;

- the deposition of Rahul Vohra, M.D., a physical-medicine-and-rehabilitation specialist who evaluated Burton for an employer's medical evaluation (EME); and

- a medical records summary prepared by Dr. Bishop, which was agreed to by Burton and Nissan.

¶12. In his deposition testimony, Dr. Capel opined that within a reasonable degree of medical certainty, the traumatic events of December 2008 and September 2010 were substantial, aggravating, and contributing events that contributed to the worsening of Burton's pre-existing lumbar-degenerative-disc disease. Regarding the September 2010 injury specifically, Dr. Capel opined, "Well, the bending, stooping, bending, stooping aggravated his degenerative disc disease."

¶13. Dr. Vohra opined to the contrary, concluding that Burton did not suffer an injury in December 2008 or September 2010. Regarding the alleged December 2008 injury, Dr. Vohra opined that Burton's reported on-the-job injury "represents a pre[-]existing issue" and that Burton likely herniated the disc in his back when he sneezed at home. As to the alleged September 2010 injury, Dr. Vohra noted that Burton had seen Dr. Capel two days prior to the alleged injury date and complained of intermittent back pain and weakness, meaning Burton's symptoms predated the alleged second injury and represented an issue that "had

5

begun prior to [September 29]."

¶14. Dr. Katz offered an opinion that fell somewhat between Dr. Capel's and Dr. Vohra's opinions. In his deposition testimony, Dr. Katz opined that Burton's disc herniation that required surgery in December 2008 was caused by, or aggravated by, Burton's alleged December 2008 work injury. Dr. Katz specifically noted that although Burton had pre-existing degenerative disc disease, Burton did not become symptomatic to the point of requiring emergency surgery until the December 2008 work event. Dr. Katz further opined that Burton did not suffer a second injury in September 2010 but had a natural progression of degenerative disc disease that was aggravated by the December 2008 injury: "But to me it didn't look like a second injury, it looked like he always had this injury. He never got completely well."

¶15. On March 27, 2018, following the hearing on the merits, the administrative judge found that Burton suffered a work-related injury on or about December 8, 2008, and awarded Burton temporary disability benefits in the amount of $398.93 per week, beginning on December 8, 2008, and continuing through March 11, 2009, which was the date of maximum medical improvement. In support of this finding, the administrative judge explained, "The Claimant and other co-employees, Holston and McCleskey, testified credibly in support of his claim. In fact, McCleskey, the lead technician, specifically testified that the Claimant reported the injury to him. It is also noted that Aldridge, Claimant's supervisor at the time, . . . seemed to corroborate much of his testimony." But because Burton returned to full-duty work at Nissan in March 2009 with no loss of wage-earning capacity, the administrative

6

judge found that Burton was not entitled to permanent disability benefits for the December 2008 injury.

¶16. Nonetheless, the administrative judge also found that Burton suffered an aggravation to his back in the course and scope of his employment on or about September 27, 2010, and awarded Burton permanent partial-disability benefits at a rate of $422.31, beginning October 19, 2011, and continuing for a period of 450 weeks (subject to the statutory maximum). Regarding the September 2010 injury, the administrative judge explained, "I find the medical opinion of Dr. Capel, a neurosurgeon, to be more compelling as it relates to causation." The administrative judge went on to find that Burton suffered permanent partial disability attributable to the alleged September 2010 injury. After considering Burton's age, education, training, prior work experience, physical impairment, and restrictions, the administrative judge found that Burton had an $885.45 loss of wage-earning capacity (subject to the statutory maximum amount of $422.31).

¶17. On April 13, 2018, Nissan petitioned for the full Commission to review the administrative judge's decision. Nissan contended that the administrative judge erred in awarding compensation for the alleged September 29, 2010 injury. (Nissan did not contest the administrative judge's decision regarding the alleged December 2008 injury.) On October 16, 2018, the Commission entered an order reversing the administrative judge's order and finding that Burton did not sustain a compensable work-related injury in September 2010. Burton now appeals.

STANDARD OF REVIEW

7

¶18. "It is well-settled law in this State that the Commission is the ultimate finder of fact in workers' compensation cases, and where substantial credible evidence supports the Commission's decision, then, absent an error of law, the decision must stand without judicial interference." *Logan v. Klaussner Furniture Corp.*, 238 So. 3d 1134, 1138 (¶11) (Miss. 2018) (citing *Smith v. Jackson Constr. Co.*, 607 So. 2d 1119, 1124 (Miss. 1992)). "The Commission's decision will be reversed only if it is not supported by substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law." *Id.* (quoting *Lovett v. Delta Reg'l Med. Ctr.*, 157 So. 3d 88, 89 (¶7) (Miss. 2015)). "[W]e may not reweigh the evidence that was before the Commission." *Wright v. Turan-Foley Motors Inc.*, 269 So. 3d 160, 167 (¶26) (Miss. Ct. App. 2018). "When the Commission's decision is supported by substantial evidence, it must be upheld. This remains true even though we might have reached a different conclusion were we the trier of fact." *Id.* We review issues of law de novo but "accord[] the interpretation of the Commission great weight and deference." *Ball v. Ashley Furniture Indus.*, 71 So. 3d 1251, 1255 (¶9) (Miss. Ct. App. 2011).

## DISCUSSION

### I. The Commission's order is supported by substantial, credible evidence and is not contrary to law.

¶19. Burton's first contention on appeal is that the Commission's order, finding that Burton did not sustain a compensable work-related injury on September 29, 2010, is not supported by substantial, credible evidence; is arbitrary and capricious; and is contrary to law. We disagree.

8

¶20.   In workers' compensation matters, it is the claimant's burden to prove the following elements by a preponderance of the evidence: "(1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the death or claimed disability." *Smith v. Tronox LLC*, 76 So. 3d 774, 779 (¶16) (Miss. Ct. App. 2011). An "accidental injury" is any "accidental injury or accidental death arising out of and in the course of employment without regard to fault which results from an untoward event or events, *if contributed to or aggravated or accelerated by the employment in a significant manner*." Miss. Code Ann. § 71-3-3(b) (Rev. 2011) (emphasis added).

¶21.   In *KLLM Inc. v. Fowler*, 589 So. 2d 670, 676 (Miss. 1991), our supreme court provided further insight on the definition of "injury." In *Fowler*, the court explained that "[r]equiring the work and injury to be causally connected in a significant manner is nothing more than *a requirement that the work connection be supported by substantial evidence as minimally causative of the injury*." *Id*. (emphasis added). Still, "[t]o be even minimally causative, . . . conditions of employment must be some substantial or significant factor in bringing about the injury." *Id*. (adopting analysis from secondary source).

¶22.   It is likewise the claimant's burden to show the "causal connection between the claimant's employment and the resulting disabling condition." *Tate v. Int'l Paper Co.*, 194 So. 3d 136, 138 (¶13) (Miss. Ct. App. 2015). "Unless common knowledge suffices, medical evidence must prove not only the existence of a disability but also its causal connection to the employment." *Id.* at 138-39 (¶13). Further, "[i]n all but the simple and routine cases, it is necessary to establish medical causation by expert testimony." *Id.* at 139 (¶15). Given

Burton's admitted pre-existing history of back pain, this is not a "routine" case regarding causation. *Wright*, 269 So. 3d at 168 (¶32). Accordingly, Burton had the burden of proving causation by medical evidence or testimony before the Commission.

¶23. In his appellate brief, Burton contends that he provided "overwhelming proof of a disabling injury that was rejected by the Commission in favor of incomplete expert opinions and erroneous factual findings." Upon reviewing the record, we do not agree. To the contrary, we find there is substantial evidence to support the Commission's finding that Burton failed to prove that he sustained a compensable work-related injury on or about September 29, 2010.[2]

¶24. To begin, the record contains several discrepancies—including ones from Burton's own testimony—as to the date of the alleged second work injury as well as to whether the alleged injury was the result of a specific occurrence or the cumulative effect of Burton's work duties. Further, Burton's medical records lack support for his contention that he suffered an additional second—or progressive—work injury on or about September 29, 2010.

---

[2] Burton contends that "[t]here is no testimony in the record to support a finding of mild, moderate or severe chronic back pain at the pre-injury 'baseline' similar to Burton's post injury and current physical state." However, the employer had no duty to prove that Burton did not suffer an injury at work; rather, Burton had the burden of proof. Also, to the extent that Burton contends his first (2008) work injury progressively worsened to the point that he was unable to work, this contention likewise lacks merit. Burton returned to work on full duty, with no restrictions, for over one year following his complete release by Dr. Capel, and the Commission found that he sustained no loss of wage-earning capacity. Accordingly, the "*Rathborne* rule," as invoked by Burton, is inapplicable here. *Cf. Rathborne, Hair & Ridgeway Box Co. v. Green*, 237 Miss. 588, 594, 115 So. 2d 674, 676 (1959) ("A corollary to the rule just stated is that when the effects of the injury have subsided, and the injury no longer combines with the disease or infirmity to produce disability, any subsequent disability attributable solely to the disease or infirmity is not compensable.").

Even Dr. Capel, on whom Burton primarily relies to support his assertion that he suffered a second work injury, did not make any notes regarding causation in Burton's contemporaneous medical records. And both Dr. Katz and Dr. Vohra opined that Burton had no new work-related injury in 2010 but rather experienced back pain from his pre-existing condition of degenerative disc disease or spondylosis.[3] These medical opinions are supported by the fact that Burton told Dr. Capel that he was experiencing back pain during his September 27, 2010 visit, two days prior to his alleged September 29, 2010 injury.

¶25. Regardless, when the record contains conflicting medical testimony, as it does here, it is the Commission's "responsibility to apply its expertise and determine which evidence is more credible." *Wright*, 269 So. 3d at 167 (¶28). The Commission reviewed the entirety of the record and found Dr. Katz's and Dr. Vohra's opinions most probative.[4] Even if we might have reached a different conclusion, "we may not reweigh the evidence that was before the Commission." *Id.* at 167 (¶26). Indeed, "whenever the expert evidence is conflicting, the Court will affirm the Commission whether the award is for or against the claimant." *Id.*

---

[3] Dr. Katz opined that Burton's natural progression of degenerative disc disease or spondylosis was aggravated by his 2008 work injury. Further, despite Dr. Capel's opinion that Burton suffered a second exacerbating injury, Dr. Capel also agreed that Burton was dealing with the downward progression of degenerative disc disease.

[4] We find no merit to Burton's contention that the Commission allocated undue weight to Dr. Vohra's medical testimony. As Burton notes, "while a treating physician's opinion is without question of great import, the Commission is not required to abide by it or required to give it any greater weight than other physicians' opinions." *Richardson v. Johnson Elec. Auto. Inc.*, 962 So. 2d 146, 152 (¶16) (Miss. Ct. App. 2007). Further, Dr. Vohra testified to his qualification to provide his medical opinion in this case during his deposition: "[A]s far as being able to evaluate someone clinically, assess their imaging, assess their functional status, and then assess if they have an underlying surgical issue, I feel very comfortable in it and – that I can have a valid opinion on that."

11

at 168 (¶28).

¶26.    Mindful of the record, as weighed against our deferential standard of review, substantial, credible evidence supports the Commission's finding that Burton failed to meet his burden of proving that he sustained a compensable work-related injury on September 29, 2010. We therefore affirm the decision of the Commission, as it is the ultimate fact finder.[5]

## II.    The Commission did not fail to liberally to construe the Mississippi Workers' Compensation Act.[6]

¶27.    Burton also contends that the Commission, in finding that Burton failed to prove that he sustained a compensable work-related injury on September 29, 2010, "made no apparent effort to liberally construe the [Mississippi Workers' Compensation] Act in order to accomplish the law's purpose . . . ." This contention lacks merit.[7]

¶28.    Prior to a 2012 legislative amendment, common law required the Mississippi Workers' Compensation Act "be given a liberal interpretation in order to effect its humanitarian aims." *Total Transp. Inc. v. Shores*, 968 So. 2d 456, 465-66 (¶24) (Miss. Ct. App. 2006) (citing *ABC Mfg. Corp. v. Doyle*, 749 So. 2d 43, 47 (¶17) (Miss. 1999)). Although this requirement was legislatively abolished for injuries occurring on or after July

---

[5] Because substantial evidence supported the Commission's finding that Burton did not meet his burden of proving that he sustained a compensable work-related injury on September 29, 2010, we do not address Burton's second issue, namely that the Commission committed factual and legal error in finding that Burton's injuries did not result in temporary and permanent occupational disability.

[6] Miss. Code Ann. §§ 71-3-1 to -129 (Rev. 2011).

[7] We combine Burton's third and fourth issues on appeal, as they are substantially the same.

1, 2012,[8] Burton's alleged injury occurred in 2010. Still, "it is the duty of the [C]ourt to construe the Act as it is written." *Id.* As discussed supra, Burton had the burden of proving, by a preponderance of the evidence, that he sustained a compensable work-related injury in September 2010. The Commission found that Burton failed to meet this burden, and even liberally construing the statute in Burton's favor, there is sufficient record evidence to support the Commission's decision. Accordingly, the Commission's order is affirmed.

¶29.   **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, TINDELL AND LAWRENCE, JJ., CONCUR. WESTBROOKS AND McDONALD, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS AND McDONALD, JJ.**

**McCARTY, J., DISSENTING:**

¶30.   The Commission was bound by precedent and statute to broadly construe the autoworker's claims in favor of finding a compensable injury. It violated this standard. Because we should reverse and remand, I respectfully dissent.

¶31.   "The singular purpose pervading the Workermen's Compensation Act is to promote the welfare of laborers within the state." *Big "2" Engine Rebuilders v. Freeman*, 379 So. 2d 888, 889 (Miss. 1980) (citations omitted). "As remedial legislation to compensate and make whole it should be construed fairly to further its humanitarian aims." *Id.* (citation omitted).

---

[8] *See* Miss. Code Ann. 71-3-1(1) (Supp. 2019) ("[N]otwithstanding any common law or case law to the contrary, this chapter shall not be presumed to favor one party over another and shall not be liberally construed in order to fulfill any beneficent purposes.").

¶32.    As Justice Waller proclaimed, for a unanimous Supreme Court, "[t]here is a broad public policy behind the Act to provide the necessary treatment to restore the injured worker to health and productivity." *Smith v. Commercial Trucking Co.*, 742 So. 2d 1082, 1087 (¶13) (Miss. 1999) (quoting *White v. Hattiesburg Cable Co.*, 590 So. 2d 867, 870 (Miss. 1991)).

¶33.    The timeline is critical here and lends credence to the autoworker's claims for compensation.  It is true that Burton was released to return to work on "full duty" with no restrictions, even though there was evidence he may not have been in perfect health.  Yet it was only in September 2010—roughly *seventeen months* after resuming work following his original injury—that he reported the second injury.  Construing this information in the light most favorable to him, it logically follows that Burton's claims are compensable.[9]

¶34.    Construing Burton's claims broadly in his favor, the Commission should have granted the autoworker benefits for his subsequent injury.  Because it failed to do so contrary to precedent and public policy, I respectfully dissent.

**WESTBROOKS AND McDONALD, JJ., JOIN THIS OPINION.**

---

[9] Nor does any doctrine bar compensation.  "The rule in this State is that when a pre-existing disease or infirmity of an employee is aggravated, lighted up, or accelerated by a work-connected injury, or if the injury combines with the disease or infirmity to produce disability, *the resulting disability is compensable*." *Rathborne, Hair & Ridgeway Box Co. v. Green*, 237 Miss. 588, 594, 115 So. 2d 674, 676 (1959).  Another rule logically follows that one–that "when the effects of the injury have subsided, and the injury no longer combines with the disease or infirmity to produce disability, any subsequent disability attributable *solely* to the disease or infirmity is not compensable." *Id*. (emphasis added).  In this case, there was evidence the subsequent injury was a new injury, which would not be barred by the *Rathborne* corollary.